Mani Sheik (SBN 245487)
SHEIK LAW, INC.
333 West Portal Ave., Suite A
San Francisco, CA 94127
Tel:  (415) 205-8490
Fax: (415) 796-0875
Email: mani@sheiklaw.us

Attorneys for Plaintiff
James Baca

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

James Baca, an individual,

            Plaintiff,

v.

Contego Services Group, LLC, a
Delaware limited liability corporation;
Patriot National, Inc., a Delaware
corporation; Toni Gott, an individual; and
DOES 1 through 20, inclusive,

            Defendants.

**CASE NO.:**

**COMPLAINT**

1. Harassment;
2. Retaliation;
3. Disability Discrimination;
4. Failure to Accommodate;
5. Failure to Engage in Interactive Process;
6. Race, National Origin, Ancestry Discrimination;
7. Age Discrimination;
8. Failure to Prevent Discrimination, Retaliation, and/or Harassment;
9. Intentional Infliction of Emotional Distress;
10. Failure to Pay All Earned Wages;
11. Failure to Provide Meal Periods or Compensation in Lieu Thereof;
12. Failure to Provide Rest Breaks or Compensation in Lieu Thereof;
13. Failure to Provide Accurate Itemized Wage Statements;
14. Failure to Provide Employment and Personnel Files;
15. Unlawful and Unfair Business Practices in Violation of Business & Professions Code § 17200, *et seq.*

**REQUEST FOR PUNITIVE DAMAGES**

**DEMAND FOR JURY TRIAL**

Plaintiff James Baca alleges:

## JURISDICTION, INTRADISTRICT ASSIGNMENT, AND VENUE

1.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. section 1332 (diversity jurisdiction), as there is diversity of citizenship among the parties—Plaintiff is a California resident and Defendants are Delaware and Florida residents—and the matter in controversy exceeds $75,000.

2.     Venue is proper in this District and Intradistrict Assignment is proper in the San Francisco/Oakland Division (Loc. R. 3-2) because Plaintiff resides in and a substantial part of the events giving rise to Plaintiff's claims, including but not limited to Plaintiff's employment with the Companies, occurred in Contra Costa County, which is in this District.

## THE PARTIES

3.     Plaintiff James Baca ("Baca") is a resident of Contra Costa County, California.

4.     Defendant Contego Services Group, LLC ("Contego") is a Delaware limited liability corporation with a principal place of business in Fort Lauderdale, Florida. At all times material hereto, Contego has conducted business in California and has been an employer whose employees are engaged throughout California.

5.     Defendant Patriot National, Inc. ("Patriot") is a Delaware corporation with a principal place of business in Fort Lauderdale, Florida. At all times material hereto, Patriot has conducted business in California and has been an employer whose employees are engaged throughout California. Patriot owns and operates Contego (collectively, the "Companies").

6.     Defendant Toni Gott is an individual who resides in Florida. At all times material hereto, Gott has been employed by the Companies.

7.     Baca is are unaware of the true names or capacities of the defendants sued herein under the fictitious names DOES 1 through 20, but prays for leave to amend and serve such fictitiously named defendants once their names and capacities become known.

8.     Baca is informed and believes, and thereon alleges, that DOES 1 through 20 are the partners, agents, owners, shareholders, managers, or employees of the named Defendants and were acting on behalf of the named Defendants at all relevant times. Baca is informed and

believes, and thereon alleges, that each and all the conduct alleged herein was performed by, or is attributable to, the named Defendants and DOES 1 through 20, each acting as the agent for the other, with legal authority to act on the other's behalf. As such, Defendants Contego, Patriot, Gott, and DOES 1 through 20 are collectively referred to as "Defendants" and the term "Defendants" as used throughout this complaint also expressly includes DOES 1 through 20. The conduct of any and all Defendants were in accordance with, and represent the official policy of, each and every one of the Defendants.

9.      Baca is informed and believes, and thereon alleges, that at all times material hereto, Defendants, and each of them, were the agents of each and all other Defendants, and in doing the things alleged herein, were acting in the course and scope of such agency and with the permission and consent of their co-defendants such that each defendant is responsible in some actionable manner for the occurrences, omissions, and injuries alleged herein. Baca is informed and believes, and thereon alleges, that each of the Defendants is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, transactions, and damages alleged herein, and is therefore jointly and severally liable for those damages.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10.     Baca exhausted his administrative remedies by timely filing a complaint with the Department of Fair Employment and Housing ("DFEH") on June 12, 2017. Baca received a Right to Sue notice the same date. This action is being brought within one year of that notice.

## FACTUAL ALLEGATIONS

11.     Baca was hired by Contego as a full-time Field Investigator on July 9, 2012. Baca lives in and his territory covered Northern California. Baca was to be one of three full-time investigators in California, the other two living in and covering Southern California. Baca was therefore Contego's only full-time investigator in Northern California. Baca's duties included conducting surveillance and taking statements for workers' compensation claims.

12.     Baca has always been an exemplary employee. He has never been reprimanded, written up, or informed that he was anything but a good job, and there is nothing negative in his personnel file.

13.     On September 26, 2013, Baca was promoted to Case Manager and given a 5% raise. For a few months, Baca was asked to manage different regions throughout the United States, but eventually he was given the entire California region to manage—one of the busiest and most profitable regions for the Companies. Baca's new manager became Gott, Contego's then Director of Operations.

14.     As his region grew busier, in November 2014 Baca was told he could use, for a few days a week, one of the investigators who worked under him to assist with paperwork. Baca selected Anthony Guerrero, his most experienced, and a very capable, employee. Baca had no issues with Guerrero or his work product. Gott, however, did.

15.     In or around June 2015, Gott told Baca to choose another of his employees to help him, because she did not like that Guerrero was speaking out about workplace conditions. Baca did not agree with the decision to retaliate against and, in effect, demote Guerrero because of his often valid criticisms about the work environment, but was forced by Gott to choose a new assistant. Baca selected Sean Miner, who was newer to Contego than Guerrero but had a lot of necessary leadership skills nonetheless.

16.     In October 2015, Guerrero informed Baca (as his supervisor) that he was spending more gas money per month then he was being reimbursed by the Companies. Baca had previously heard similar complaints from other investigators he supervised and had brought those complaints to Gott's attention. He did so again after Guerrero's complaint. Rather than address the valid concerns, Gott became angry and said she was tired of Guerrero's "whining" and "complaining." Gott then said she wanted Baca to harass Guerrero so thoroughly that he would quit. Specifically, Gott wanted Baca to make Guerrero's life so "miserable" by putting him on surveillance cases far away from his house that Guerrero would simply quit. Baca was quite surprised by the directive and refused. Gott was insistent, however. She wanted Baca to create such an intolerable workplace that Guerrero would simply quit. And she would not drop her campaign of revenge.

17.     In or around November or December 2015, Gott and Human Resources manager Jamie O'Connor called Baca to explain that they believed Guerrero had been overbilling clients for phone calls and, thus, improperly padding his timecard and pay. Gott and O'Connor also

1   accused Guerrero of breaking company rules by using his own cell phone, and wanted Baca to

2   provide support for their allegations. Baca explained that he did not believe Guerrero had done

3   anything wrong, and noted investigators often use personal cell phones when their Contego-

4   issued phones did not receive a signal but phones from different providers did. Gott and

5   O'Connor would have none of it. They wanted Guerrero gone, were willing to drum up false or

6   flimsy pretenses to do it, and wanted Baca to cooperate with their campaign. Again Baca refused.

7         18.    After that call, Baca knew with certainty that Gott was on a witch hunt for

8   Guerrero. And, sure enough, in mid-December 2015, Baca was informed that Guerrero was being

9   terminated. Baca had been Guerrero's immediate supervisor for approximately two years and

10   never had a problem with Guerrero. Baca did not recommend or agree with the termination and

11   believed it was an illegal termination brought about solely by Gott's dislike of Guerrero's

12   speaking out about workplace violations.

13         19.    Over the ensuing winter holidays, Baca took a pre-planned vacation, during which

14   Miner acted as the regional manager in his absence. When Baca returned, Miner said that he

15   (Miner) had recently spoken with Gott and told her he needed rest because he had been working

16   so many overtime hours the previous weeks, for which he was not paid. Miner noted that his

17   saying this seemed to upset Gott very much. When Baca then spoke with Gott, Gott was very

18   upset with Miner because Miner had complained about how many overtime hours he worked.

19   Gott told Baca that she wanted to "throat punch" Miner, a common term Gott uses about people

20   she does not like. Either during this call or another call shortly after, Gott said she wanted Baca to

21   "torture" Miner any way Baca wanted so that Miner would quit. Once again, as with Guerrero,

22   Gott wanted Baca to use his power as regional manager to send Miner on cases far from his home

23   and on weekends just because the employee spoke out about workplace violations. Though it is

24   not uncommon for investigators to work weekends, Gott expressly wanted and instructed Baca to

25   force Miner to work weekends just to harass him and make him want to quit.

26         20.    Thus, for example, a short while later, when Miner requested of Baca to have a

27   weekend day off later that month or to work nearby so he could attend his young daughter's

28   birthday party, Gott instructed Baca to assign Miner a case several hours away for the day before

1   the party just so Miner would miss his daughter's birthday. Baca explained he had already

2   approved Miner to work a case close to his home. Gott did not care. She said Baca had "no

3   choice" but to assign the far away case to Miner so that, if he did not work it, she could terminate

4   Miner for abandoning his job.

5        21.    Gott's comments and threats to and through Baca are wholly in line with

6   statements she apparently made to Miner directly, including that "When [Miner] complained to

7   Gott about not being paid properly for the excessive hours he worked, Gott told him his life was

8   going to get much worse if he kept complaining." (*Miner v. Contego Investigative Services, Inc.*;

9   E.D.Cal. Case No. 2:16-at-00808; Document 1 (filed 07/08/16) at ¶ 30) Thus, "Contego retaliated

10   against [Miner] for complaining about its unlawful compensation practices by assigning him to

11   investigations that required extensive travel and assignments requiring surveillance on holidays,

12   such as Christmas." (*Id.* at ¶ 31)

13        22.    Also in January 2016, Baca's region was assigned a case with instructions to

14   obtain a signed medical release from a Hispanic female claimant. Baca assigned the case to a

15   local investigator, who met with the claimant and she printed her signature because she did not

16   know how to sign in cursive. Baca's immediate supervisor by this time, Director of Operations

17   Seth Markham, became upset and said there was no reason the claimant could not sign in cursive,

18   and that "the Mexicans" need to learn how to sign in English.

19        23.    Baca, who is Hispanic, became very upset and was very offended by Markham's

20   blatantly racist comment, and said as much to Markham. When Baca got off the phone with

21   Markham, he immediately called Gott, who had by this time been promoted to Vice President of

22   Operations, and left a voicemail explaining what Markham had said and that he (Baca) was very

23   upset and wanted to file a complaint with Gott against Markham. When Gott called back, Baca

24   explained again what happened. Gott agreed Markham should not have brought up that the

25   claimant was Mexican and that she would talk with Markham. Upon information and belief, Baca

26   alleges that no formal investigation was conducted. Indeed, Baca, the complainant, was never

27   interviewed following his complaint. Nor was Baca ever given a response on what action the

28   Companies took as a result of his complaint.

24.     This was not Markham's only discriminatory comment. In late March 2017, Markham called Baca "old." Baca was Contego's oldest Case Manager.

25.     By this time, Baca was experiencing significant stress and psychological strain as a result of the situations with Miner – now the second investigator in a few months that he was forced to harass and "torture" in retaliation for the investigator's raising legitimate concerns about the Companies' labor practices – and the racist incident dealing with his immediate supervisor. Baca began having anxiety attacks over these matters, and contacted Naomi Barnett in Human Resources to request time off. Baca was given February 2016 off without pay, but was never informed of his rights during this process. The Companies also failed to engage in the interactive process with Baca, or to offer any reasonable accommodations. Baca was only told he would come back to his management position upon return. But even that was not true.

26.     On July 7, 2016, a few months after Baca returned from leave, Gott told Baca he was no longer "working out" as a manager and was therefore losing his Case Manager position. Gott gave Baca the "choice" of managing a different region or going back into the field as an investigator. After ending the call with Gott, Baca was so nervous and scared that he had to go to urgent care for an anxiety attack.

27.     Baca had no real "choice." Gott was well aware that Baca's wife was undergoing cancer treatment at that time, so there was simply no chance he would accept a change in position that would require him to be on the road. So, in reality, Gott was setting up the situation to make it look like Baca had some kind of "choice." He did not. The bottom line is that Gott demoted Baca to harass and retaliate against him for refusing to harass, intimidate, and torture employees.

28.     The next day, July 8 (a Friday), Baca contacted Barnett to complain formally that Gott was harassing and retaliating against him, explaining what Gott had wanted him to do to Guerrero and Miner, and to ask to open a workers' compensation claim. Barnett expressed surprise that Baca's position was changing since she had received no paperwork to that effect, and said she would start an investigation the following Monday and would inform Contego's President, Jason Linn. Baca said he was worried he would lose his job and was nervous to go back to work on Monday, and expressly requested that he not be harassed or retaliated against on

1     Monday (or thereafter).

2          29.     On Tuesday, July 12, Baca saw his primary care physician, who immediately took

3 him off work due to stress and anxiety. Baca was ultimately released back to work on October 31,

4 2016. The day he returned, Baca learned he already been retaliated against, as he was demoted

5 back to Field Investigator while on disability leave. Later, in December, the Companies retaliated

6 further by switching Baca from a salary position to an hourly position and effectively lowering

7 his hourly rate more than 15%. When Baca asked his new manager, Ivan Merida, why his pay

8 dropped so much, Merida said Baca will have to work lots of overtime to get back to where his

9 salary used to be.

10          30.     As a Field Investigator, both after his demotion in July 2016 and before he was

11 promoted to Case Manager in September 2013, Baca was routinely caused, suffered, and

12 permitted to work in excess of eight hours a day and/or forty a week without being paid for all

13 hours worked, including overtime and without being provided timely meal periods and rest

14 breaks, or premium pay in lieu thereof. Indeed, while on surveillance assignments, which often

15 extended for more than five hours, Baca was required to stay on site and in his car at all times,

16 meaning he could not take meal or rest breaks as required by law.

17          31.     On January 7, 2017, Baca was assigned a surveillance case in Manteca, California,

18 in the middle of a torrential, week-long rainstorm. The job required that he get license plate

19 information, so he had to get out of his car to do the job. As he was walking, Baca tripped over a

20 sidewalk that was raised from a tree root and ended up hurting his knee, hip, back, and hand.

21 Baca went to the local emergency room for his injuries, and was off work for several weeks as a

22 result. Baca returned to work in March, but with certain restrictions of which the Companies are

23 aware but are not accommodating. Instead, the Companies and Gott are now following their tried

24 and true formula for retaliation and harassment. Indeed, Baca would never have been on this

25 assignment in the first place had Defendants not harassed and retaliated against him by demoting

26 him to Field Investigator. Thus, any and all injuries and damages Baca sustained as a result of this

27 incident occurred as a direct and proximate result of Defendants misconduct.

28          32.     Since Baca returned from leave—indeed, since he returned from his first leave on

October 31—Defendants have continued to make his job so unbearable to make him quit, just like they did with Guerrero and Miner. For example, right after he returned from his second leave, Baca was assigned to work a surveillance case in Oroville, California. The assignment required Baca to drive 150 miles each way that day, even though another investigator lives much closer to the location and was available during that same timeframe. All told, Baca was in a car 20 hours that day, greatly exacerbating his injuries. What's more, even if another investigator was not available, the Companies could readily have hired contract investigators for the job, as Baca had done many, many times when he was Regional Case Manager. Either option would have been more efficient for both the client and Defendants. But Defendants chose deliberately to "torture" Baca by giving him a job that required extensive driving, even though they are fully aware that Baca is restricted from sitting in place for more than an hour.

33.     Similarly, in early March 2017, Baca was assigned a job with instructions that he work a split day, meaning work four hours and, if he could not locate the subject of the investigation, go home and return in the evening. The assignment effectively required Baca to leave home at 4:00 a.m., come back mid-day, and then work again in late evening. In nearly five years with the Companies, Baca has never before been asked to work a split day or assigned any of his staff to do so when he was a manager. That the job was assigned wholly to harass and retaliate is made evident by the fact that another investigator lives closer than Baca to the location and, even more blatantly, there was another job available to assign to Baca the same day just 10-15 minutes from Baca's house with a 7:00 a.m. start time. What's more, the assignment required Baca to have to cancel two medical appointments about which Defendants had long known, further delaying his recovery and injuring him. And, as an overtly malicious and capricious act, the assignment flew in the face of Baca's orders not to drive because he is taking medications that affect his alertness. Defendants were and are well aware of this restriction, yet deliberately assigned Baca a case far from home and put him in a position where he may hurt himself or the public at large.

34.     Throughout March, Defendants continued to assign Baca jobs (often on less than 24-hours' notice) that required him to cancel numerous medical appointments, about which

1  Defendants knew. These assignments continued the harassing and retaliatory pattern meant to
2  "torture" Baca into quitting.

3       35.      All of this may well explain why, when the Companies' lawyers contacted Baca to
4  ask that he testify in Guerrero's and Miner's lawsuits (each having sued the Companies
5  separately) and Baca said he would do as requested but that he will not be a good witness for the
6  Companies because he would testify truthfully under oath that Defendants harassed and retaliated
7  against the former employees, the Companies' attorneys told Baca that he was a "radioactive"
8  employee, and refused to call him as a witness.

9       36.      On March 31, 2017, Baca requested, through his counsel and pursuant to Labor
10  Code sections 226, 432, and 1198.5, that the Companies provide copies of all his personnel and
11  employment files. The Companies provided Baca's files on May 1, 2017.

12                           **FIRST CAUSE OF ACTION**
13                                (Harassment)
14                           (Against All Defendants)

15       37.      Baca realleges and incorporates by reference all prior Paragraphs as if fully set
16  forth herein.

17       38.      At all times material hereto, the Companies were employers, Gott a manager
18  employed by and an agent of the Companies, and Baca and an employee as defined by the Fair
19  Employment and Housing Act ("FEHA").

20       39.      FEHA requires employers and employees to refrain from harassing an employee
21  based on the employee's disability, race, national origin, ancestry, and/or age, among other
22  reasons, and to provide each employee with a work environment free of harassment.

23       40.      Defendants, and each of them, subjected Baca to unwanted harassment because of
24  his disability, race, national origin, ancestry, and/or age, as discussed above. Each of the
25  Defendants was aware of and participated in this harassment.

26       41.      The harassing conduct was so severe and pervasive as to alter the conditions of
27  Baca's employment and create a hostile and abusive work environment that affected tangible
28  aspects of Baca's compensation, terms, conditions, and/or privileges of employment. Defendants,

and each of them, created and allowed to exist a hostile work environment for Baca and harassed him because of his disability, race, national origin, ancestry, and/or age.

42.     The harassing conduct was so widespread and persistent that a reasonable person in Baca's circumstances would have considered the work environment to be hostile and abusive, and Baca in fact considered the work environment created by Defendants, and each of them, to be hostile and abusive.

43.     Defendants, and each of them, including supervisors, managers, and/or agents of the Companies, and each of them, knew or should have known of the harassing conduct and failed to take immediate and appropriate corrective action.

44.     Defendants, and each of them, are vicariously and strictly liable under FEHA for disability-, race-, national origin-, ancestry-, and/or age-based harassment of Baca by supervisors with immediate or successively higher authority over him within the meaning of California Government Code Section 12926(s), including but not limited Gott.

45.     As a direct, foreseeable, and legal result of the Defendants' conduct, Baca has suffered and continues to suffer substantial losses in employment potential and in earnings, bonuses, deferred compensation, and other employment benefits, and has suffered and continues to suffer substantial embarrassment, extreme and severe humiliation, mental anguish, and emotional distress, all to his damage in an amount according to proof. Baca has incurred and will incur medical and other incidental expenses for treatment by health professionals.

46.     Defendants committed the conduct alleged herein maliciously, fraudulently, and oppressively with the wrongful intention of injuring Baca, from a willful improper motive amounting to malice, and in conscious disregard of Baca's rights and for the deleterious consequences of the Defendants' conduct. Defendants had actual and constructive knowledge of the conduct described and alleged herein and, through their managing agents and/or supervisors, authorized, condoned, and ratified the unlawful conduct of all of the other Defendants named in this action. Baca is thus entitled to recover punitive damages in an amount according to proof.

47.     As a result of Defendants' conduct as alleged herein, Baca is entitled to reasonable attorneys' fees and costs of suit.

**SECOND CAUSE OF ACTION**

(Retaliation)

(Against Contego and Patriot)

48.     Baca realleges and incorporates by reference all prior Paragraphs as if fully set forth herein.

49.     At all times material hereto, the Companies were employers and Baca an employee as defined by FEHA.

50.     FEHA makes unlawful an employer's discriminating against an employee because the person engaged in protected activity.

51.     Baca engaged in protected activity by refusing to engage in illegal conduct, by complaining and informing the Companies of the abusive, discriminatory, and harassing behavior of a manager, Gott, and by requesting that the Companies take appropriate action to remedy the situation, all as described above. Baca's refusal to engage in such illegal activity and his communications constitute protected activity in that he was opposing conduct that he reasonably and in good faith believed to be unlawful.

52.     The Companies have long known about Gott's misconduct but have condoned and allowed it to continue. Indeed, Baca is the third employee subjected to Gott's illegal, harassing, and retaliatory conduct.

53.     Baca was retaliated against for engaging in such protected activity in that Baca was subjected to adverse treatment, denied equal treatment, denied job benefits and opportunities, denied training, denied promotion, demoted, denied accommodation, not engaged with in an interactive process, and otherwise harassed and discriminated and retaliated against on account of his engaging in protected activity. Each of the Defendants was aware of and participated in this retaliation.

54.     As a direct, foreseeable, and legal result of the Defendants' conduct, Baca has suffered and continues to suffer substantial losses in employment potential and in earnings, bonuses, deferred compensation, and other employment benefits, and has suffered and continues to suffer substantial embarrassment, extreme and severe humiliation, mental anguish, and

emotional distress, all to his damage in an amount according to proof. Baca has incurred and will incur medical and other incidental expenses for treatment by health professionals.

55.    Defendants committed the conduct alleged herein maliciously, fraudulently, and oppressively with the wrongful intention of injuring Baca, from a willful improper motive amounting to malice, and in conscious disregard of Baca's rights and for the deleterious consequences of the Defendants' conduct. Defendants had actual and constructive knowledge of the conduct described and alleged herein and, through their managing agents and/or supervisors, authorized, condoned, and ratified the unlawful conduct of all of the other Defendants named in this action. Baca is thus entitled to recover punitive damages in an amount according to proof.

56.    As a result of Defendants' conduct as alleged herein, Baca is entitled to reasonable attorneys' fees and costs of suit.

### THIRD CAUSE OF ACTION

(Disability Discrimination)

(Against Contego and Patriot)

57.    Baca realleges and incorporates by reference all prior Paragraphs as if fully set forth herein.

58.    At all times material hereto, the Companies were employers and Baca an employee as defined by FEHA.

59.    Defendants' conduct, as alleged above, constitutes unlawful discrimination on the basis of physical and/or mental disability and/or medical condition under Government Code section 12940 in that Baca was subjected to adverse treatment, denied equal treatment, denied job benefits and opportunities, denied training, denied promotion, demoted, denied accommodation, not engaged with in an interactive process, and otherwise harassed and discriminated and retaliated against on account of his physical and/or mental disability and/or medical condition. Each of the Defendants was aware of and participated in this discrimination. Defendants' conduct was not based upon a bona fide occupational qualification.

60.    As a direct, foreseeable, and legal result of the Defendants' conduct, Baca has suffered and continues to suffer substantial losses in employment potential and in earnings,

1   bonuses, deferred compensation, and other employment benefits, and has suffered and continues

2   to suffer substantial embarrassment, extreme and severe humiliation, mental anguish, and

3   emotional distress, all to his damage in an amount according to proof. Baca has incurred and will

4   incur medical and other incidental expenses for treatment by health professionals.

5       61.     Defendants committed the conduct alleged herein maliciously, fraudulently, and

6   oppressively with the wrongful intention of injuring Baca, from a willful improper motive

7   amounting to malice, and in conscious disregard of Baca's rights and for the deleterious

8   consequences of the Defendants' conduct. Defendants had actual and constructive knowledge of

9   the conduct described and alleged herein and, through their managing agents and/or supervisors,

10  authorized, condoned, and ratified the unlawful conduct of all of the other Defendants named in

11  this action. Baca is thus entitled to recover punitive damages in an amount according to proof.

12      62.     As a result of Defendants' conduct as alleged herein, Baca is entitled to reasonable

13  attorneys' fees and costs of suit.

**<u>FOURTH CAUSE OF ACTION</u>**

(Failure to Accommodate)

(Against Contego and Patriot)

17      63.     Baca realleges and incorporates by reference all prior Paragraphs as if fully set

18  forth herein.

19      64.     At all times material hereto, the Companies were employers and Baca an employee

20  as defined by FEHA.

21      65.     FEHA requires an employer to make reasonable accommodations for an

22  employee's disability to enable the employee to perform a position's essential functions, unless

23  doing so would produce undue hardship to the employer's operations.

24      66.     Baca notified Defendants of his physical and/or mental disability and/or medical

25  condition and of his need for a reasonable accommodation, as described above. However,

26  Defendants failed to provide Baca a reasonable accommodation, and instead demoted him and

27  otherwise harassed and discriminated and retailed against him. Accommodating Baca's physical

28  and/or mental disability and/or medical condition would not have been an undue hardship.

67.     As a direct, foreseeable, and legal result of the Defendants' conduct, Baca has suffered and continues to suffer substantial losses in employment potential and in earnings, bonuses, deferred compensation, and other employment benefits, and has suffered and continues to suffer substantial embarrassment, extreme and severe humiliation, mental anguish, and emotional distress, all to his damage in an amount according to proof. Baca has incurred and will incur medical and other incidental expenses for treatment by health professionals.

68.     Defendants committed the conduct alleged herein maliciously, fraudulently, and oppressively with the wrongful intention of injuring Baca, from a willful improper motive amounting to malice, and in conscious disregard of Baca's rights and for the deleterious consequences of the Defendants' conduct. Defendants had actual and constructive knowledge of the conduct described and alleged herein and, through their managing agents and/or supervisors, authorized, condoned, and ratified the unlawful conduct of all of the other Defendants named in this action. Baca is thus entitled to recover punitive damages in an amount according to proof.

69.     As a result of Defendants' conduct as alleged herein, Baca is entitled to reasonable attorneys' fees and costs of suit.

**FIFTH CAUSE OF ACTION**

(Failure to Engage in Interactive Process)

(Against Contego and Patriot)

70.     Baca realleges and incorporates by reference all prior Paragraphs as if fully set forth herein.

71.     At all times material hereto, the Companies were employers and Baca an employee as defined by FEHA.

72.     FEHA makes it an unlawful employment practice to fail to engage in a timely, good-faith, interactive process with an employee to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee with a known physical and/or mental disability and/or medical condition.

73.     Baca notified Defendants of his physical and/or mental disability and/or medical condition and of his need for a reasonable accommodation, as described above. However,

Defendants failed to engage in a timely, good-faith, interactive process with Baca to determine effective reasonable accommodations, and instead demoted him and otherwise harassed and discriminated and retailed against Baca.

74.    As a direct, foreseeable, and legal result of the Defendants' conduct, Baca has suffered and continues to suffer substantial losses in employment potential and in earnings, bonuses, deferred compensation, and other employment benefits, and has suffered and continues to suffer substantial embarrassment, extreme and severe humiliation, mental anguish, and emotional distress, all to his damage in an amount according to proof. Baca has incurred and will incur medical and other incidental expenses for treatment by health professionals.

75.    Defendants committed the conduct alleged herein maliciously, fraudulently, and oppressively with the wrongful intention of injuring Baca, from a willful improper motive amounting to malice, and in conscious disregard of Baca's rights and for the deleterious consequences of the Defendants' conduct. Defendants had actual and constructive knowledge of the conduct described and alleged herein and, through their managing agents and/or supervisors, authorized, condoned, and ratified the unlawful conduct of all of the other Defendants named in this action. Baca is thus entitled to recover punitive damages in an amount according to proof.

76.    As a result of Defendants' conduct as alleged herein, Baca is entitled to reasonable attorneys' fees and costs of suit.

## SIXTH CAUSE OF ACTION

(Race, National Origin, Ancestry Discrimination)

(Against Contego and Patriot)

77.    Baca realleges and incorporates by reference all prior Paragraphs as if fully set forth herein.

78.    At all times material hereto, the Companies were employers and Baca an employee as defined by FEHA.

79.    Defendants' conduct, as alleged above, constitutes unlawful discrimination on the basis of age under Government Code section 12940 in that Baca was subjected to adverse treatment, denied equal treatment, denied job benefits and opportunities, denied training, denied

1  promotion, demoted, denied accommodation, not engaged with in an interactive process, and

2  otherwise harassed and discriminated and retaliated against on account of his race, national

3  origin, and/or ancestry. Each of the Defendants was aware of and participated in this

4  discrimination. Defendants' conduct was not based upon a bona fide occupational qualification.

5          80.     As a direct, foreseeable, and legal result of the Defendants' conduct, Baca has

6  suffered and continues to suffer substantial losses in employment potential and in earnings,

7  bonuses, deferred compensation, and other employment benefits, and has suffered and continues

8  to suffer substantial embarrassment, extreme and severe humiliation, mental anguish, and

9  emotional distress, all to his damage in an amount according to proof. Baca has incurred and will

10 incur medical and other incidental expenses for treatment by health professionals.

11         81.     Defendants committed the conduct alleged herein maliciously, fraudulently, and

12 oppressively with the wrongful intention of injuring Baca, from a willful improper motive

13 amounting to malice, and in conscious disregard of Baca's rights and for the deleterious

14 consequences of the Defendants' conduct. Defendants had actual and constructive knowledge of

15 the conduct described and alleged herein and, through their managing agents and/or supervisors,

16 authorized, condoned, and ratified the unlawful conduct of all of the other Defendants named in

17 this action. Baca is thus entitled to recover punitive damages in an amount according to proof.

18         82.     As a result of Defendants' conduct as alleged herein, Baca is entitled to reasonable

19 attorneys' fees and costs of suit.

20                              **SEVENTH CAUSE OF ACTION**

21                                 (Age Discrimination)

22                             (Against Contego and Patriot)

23         83.     Baca realleges and incorporates by reference all prior Paragraphs as if fully set

24 forth herein.

25         84.     At all times material hereto, the Companies were employers and Baca an employee

26 as defined by FEHA.

27         85.     Defendants' conduct, as alleged above, constitutes unlawful discrimination on the

28 basis of age under Government Code section 12940 in that Baca was subjected to adverse

treatment, denied equal treatment, denied job benefits and opportunities, denied training, denied promotion, demoted, denied accommodation, not engaged with in an interactive process, and otherwise harassed and discriminated and retaliated against on account of his age. Each of the Defendants was aware of and participated in this discrimination. Defendants' conduct was not based upon a bona fide occupational qualification.

86.     As a direct, foreseeable, and legal result of the Defendants' conduct, Baca has suffered and continues to suffer substantial losses in employment potential and in earnings, bonuses, deferred compensation, and other employment benefits, and has suffered and continues to suffer substantial embarrassment, extreme and severe humiliation, mental anguish, and emotional distress, all to his damage in an amount according to proof. Baca has incurred and will incur medical and other incidental expenses for treatment by health professionals.

87.     Defendants committed the conduct alleged herein maliciously, fraudulently, and oppressively with the wrongful intention of injuring Baca, from a willful improper motive amounting to malice, and in conscious disregard of Baca's rights and for the deleterious consequences of the Defendants' conduct. Defendants had actual and constructive knowledge of the conduct described and alleged herein and, through their managing agents and/or supervisors, authorized, condoned, and ratified the unlawful conduct of all of the other Defendants named in this action. Baca is thus entitled to recover punitive damages in an amount according to proof.

88.     As a result of Defendants' conduct as alleged herein, Baca is entitled to reasonable attorneys' fees and costs of suit.

## EIGHTH  CAUSE OF ACTION

(Failure to Prevent Discrimination, Retaliation, and/or Harassment)

(Against Contego and Patriot)

89.     Baca realleges and incorporates by reference all prior Paragraphs as if fully set forth herein.

90.     At all times material hereto, Contego and Patriot were employers and Baca an employee as defined by FEHA.

91.     FEHA requires the Companies take all reasonable steps necessary to prevent discrimination, harassment, and retaliation in the workplace, and to take prompt corrective action to address the alleged conduct. They failed to do so.

92.     Baca, while performing his job duties, was subjected to discrimination, harassment, and/or retaliation on account of his disability, race, national origin, ancestry, age, and/or engaging in protected activity in violation of FEHA.

93.     At all times material hereto, each of the Defendants was aware of and participated in this conduct. Defendants, and each of them, knew or reasonably should have known that the conduct alleged herein would and did cause the discriminatory, harassing, and/or retaliatory effects and the physical and emotional distress to Baca as alleged above. All Defendants were aware of the discriminatory, harassing, and retaliatory conduct to which Baca was subjected, as well as the fact that he found it offensive, because Baca complained of the conduct to Defendants.

94.     The discrimination, harassment, and retaliation was objectively offensive to reasonable employees in Baca's circumstances, and Baca himself found the conduct offensive.

95.     Defendants, and each of them, had the power, ability, authority, and duty to stop engaging in the conduct alleged above and to intervene to prevent or prohibit such conduct.

96.     As a direct, foreseeable, and legal result of the Defendants' conduct, Baca has suffered and continues to suffer substantial losses in employment potential and in earnings, bonuses, deferred compensation, and other employment benefits, and has suffered and continues to suffer substantial embarrassment, extreme and severe humiliation, mental anguish, and emotional distress, all to his damage in an amount according to proof. Baca has incurred and will incur medical and other incidental expenses for treatment by health professionals.

97.     Defendants committed the conduct alleged herein maliciously, fraudulently, and oppressively with the wrongful intention of injuring Baca, from a willful improper motive amounting to malice, and in conscious disregard of Baca's rights and for the deleterious consequences of the Defendants' conduct. Defendants had actual and constructive knowledge of the conduct described and alleged herein and, through their managing agents and/or supervisors, authorized, condoned, and ratified the unlawful conduct of all of the other Defendants named in

1    this action. Baca is thus entitled to recover punitive damages in an amount according to proof.

2        98.    As a result of Defendants' conduct as alleged herein, Baca is entitled to reasonable

3    attorneys' fees and costs of suit.

4                            **NINTH  CAUSE OF ACTION**

5                       (Intentional Infliction of Emotional Distress)

6                                (Against All Defendants)

7        99.    Baca realleges and incorporates by reference all prior Paragraphs as if fully set

8    forth herein.

9        100.    As described above, Defendants engaged in outrageous conduct towards Baca with

10   the intention to cause, or with reckless disregard for the probability of causing, him to suffer

11   severe physical and emotional distress. To the extent that said outrageous conduct was

12   perpetrated by certain Defendants, the remaining Defendants confirmed and ratified said conduct

13   with the knowledge that Baca's emotional and physical distress would thereby increase, and with

14   a wanton and reckless disregard for the deleterious consequences to Baca.

15       101.    Defendants, and each of them, were aware and/or should have been aware of the

16   likelihood that Baca would suffer severe emotional distress as a result of the above-described

17   outrageous conduct. The outrageous and shocking conduct of Defendants, and each of them, was

18   done intentionally and for the purpose of inflicting upon Baca extreme and severe emotional

19   distress.

20       102.    As a direct and foreseeable result of the Defendants' conduct, Baca has suffered

21   and continues to suffer substantial losses in employment potential and in earnings, bonuses,

22   deferred compensation, and other employment benefits, and has suffered and continues to suffer

23   substantial embarrassment, extreme and severe humiliation, mental anguish, and emotional

24   distress, all to his damage in an amount according to proof. Baca has incurred and will incur

25   medical and other incidental expenses for treatment by health professionals.

26       103.    Defendants committed the conduct alleged herein maliciously, fraudulently, and

27   oppressively with the wrongful intention of injuring Baca, from a willful improper motive

28   amounting to malice, and in conscious disregard of Baca's rights and for the deleterious

1    consequences of the Defendants' conduct. Defendants had actual and constructive knowledge of

2    the conduct described and alleged herein and, through their managing agents and/or supervisors,

3    authorized, condoned, and ratified the unlawful conduct of all of the other Defendants named in

4    this action. Baca is thus entitled to recover punitive damages in an amount according to proof.

5        104.    As a result of Defendants' conduct as alleged herein, Baca is entitled to reasonable

6    attorneys' fees and costs of suit.

7                **TENTH CAUSE OF ACTION**

8               (Failure to Pay All Earned Wages)

9                (Against Contego and Patriot)

10        105.    Baca realleges and incorporates by reference all prior Paragraphs as if fully set

11    forth herein.

12        106.    The Companies were employers under the California Labor Code and applicable

13    IWC Wage Order.

14        107.    California law presumes Baca was not exempt from the wage, hour, and working

15    conditions rules provided in the Labor Code and applicable IWC Wage Order unless a specific

16    exemption applies. No exemption applied to Baca's employment during the times that he was a

17    Field Investigator.

18        108.    As a Field Investigator, both after Baca's demotion in July 2016 and before he was

19    promoted to Case Manager in September 2013, Baca was routinely caused, suffered, and

20    permitted to work in excess of eight hours a day and/or forty a week without being paid for all

21    hours worked.

22        109.    Pursuant to Labor Code sections 204, 218, 218.5, 218.6, 510, 558, 1194, 1198, and

23    related statutes, and also pursuant to the applicable IWC Wage Order, the Companies were

24    required to pay Baca overtime compensation at prescribed hourly overtime rates for all overtime

25    hours actually worked.

26        110.    The Companies routinely and intentionally failed to calculate Baca's overtime

27    compensation. The Companies routinely and intentionally failed to record accurate time records

28    showing when Baca began and ended each work period. By failing to record properly the actual

1    hours or days Baca worked, the Companies routinely and intentionally failed to pay Baca for the

2    premium pay for all of his overtime hours when he was a Field Investigator, as required by Labor

3    Code sections 204, 218, 218.5, 218.6, 510, 558, 1194, 1198, and related statutes, and also

4    pursuant to the applicable IWC Wage Order. Specifically, the Companies failed to compensate

5    Baca for overtime hours worked in excess of eight (8) hours per day, forty (40) hours per week,

6    and/or for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a

7    workweek at one and one-half (l ½) times the regular rate of pay, and/or double-time hours for

8    hours worked in excess of twelve (12) hours per day and for all hours worked in excess of eight

9    (8) hours on the seventh (7th) consecutive workday.

10       111.   As a direct and proximate result of the Companies' willful, knowing, and

11   intentional violation of the above laws, Baca has been damaged in that he has not received all

12   wages due and owing, and has suffered and continues to suffer losses related to the use and

13   enjoyment of wages and lost interest on such wages, in amounts according to proof at trial.

14       112.   As a direct and proximate result of the Companies' willful, knowing, and

15   intentional violation of the above laws, Baca was damaged by not receiving all wages owed to

16   him and is entitled, pursuant to Labor Code section 1194, to recover the unpaid balance of the full

17   amount of this overtime wage compensation due, including interest thereon, together with

18   reasonable attorneys' fees and costs of suit.

19       113.   As a direct and proximate result of the Companies' willful, knowing, and

20   intentional violation of the aforementioned labor regulations, Baca is entitled, pursuant to Labor

21   Code section 558, to recover civil penalties against the Companies.

22                        **ELEVENTH CAUSE OF ACTION**

23              (Failure to Provide Meal Periods or Compensation in Lieu Thereof)

24                        (Against Contego and Patriot)

25       114.   Baca realleges and incorporates by reference all prior Paragraphs as if fully set

26   forth herein.

27       115.   The Companies were employers under the California Labor Code and applicable

28   IWC Wage Order.

116.   California law presumes Baca was not exempt from the wage, hour, and working conditions rules provided in the Labor Code and applicable IWC Wage Order unless a specific exemption applies. No exemption applied to Baca's employment during the times that he was a Field Investigator.

117.   Labor Code section 226.7(b) provides that an employer "shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health."

118.   Labor Code section 226.7(c) provides that "[i]f an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided."

119.   Labor Code section 512 provides that an employer "may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived."

120.   As a Field Investigator, both after his demotion in July 2016 and before he was promoted to Case Manager in September 2013, the Companies routinely failed to provide Baca timely meal periods or premium pay in lieu thereof. Indeed, while on surveillance assignments, which often extended for more than five hours, Baca was required to stay on site and in his car at all times, meaning Baca worked for the Companies without being provided an uninterrupted, duty-free 30-minute meal period for a work period of more than five hours or a second meal

1    period for a work period of more than ten hours. Baca was not provided and routinely had to

2    forego meal periods to perform his job duties.

3        121.    The Companies never paid Baca an hour of premium pay in lieu of a missed meal

4    period in a day.

5        122.    As a direct and proximate result of the Companies' willful conduct, Baca has

6    suffered harm and is entitled to an additional hour of premium pay for each shift during which he

7    was not provided a 30-minute uninterrupted, duty-free meal period, in an amount to be

8    ascertained at trial.

9                            **TWELFTH  CAUSE OF ACTION**

10                   (Failure to Provide Rest Breaks or Compensation in Lieu Thereof)

11                              (Against Contego and Patriot)

12       123.    Baca realleges and incorporates by reference all prior Paragraphs as if fully set

13   forth herein.

14       124.    The Companies were employers under the California Labor Code and applicable

15   IWC Wage Order.

16       125.    California law presumes Baca was not exempt from the wage, hour, and working

17   conditions rules provided in the Labor Code and applicable IWC Wage Order unless a specific

18   exemption applies. No exemption applied to Baca's employment during the times that he was a

19   Field Investigator.

20       126.    Labor Code section 226.7(b) provides that an employer "shall not require an

21   employee to work during a meal or rest or recovery period mandated pursuant to an applicable

22   statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the

23   Occupational Safety and Health Standards Board, or the Division of Occupational Safety and

24   Health."

25       127.    Labor Code section 226.7(c) provides that "[i]f an employer fails to provide an

26   employee a meal or rest or recovery period in accordance with a state law . . . the employer shall

27   pay the employee one additional hour of pay at the employee's regular rate of compensation for

28   each workday that the meal or rest or recovery period is not provided."

128.   The applicable IWC Wage Order requires that employers authorize and permit non-exempt employees to take a rest period that must, insofar as practicable, be taken in the middle of each work period, based on the total hours worked daily and at the minimum rate of a net ten consecutive minutes for each four-hour work period, or major fraction thereof.

129.   As a Field Investigator, both after his demotion in July 2016 and before he was promoted to Case Manager in September 2013, the Companies routinely failed to provide Baca timely meal periods or premium pay in lieu thereof. Indeed, while on surveillance assignments, which often extended for more than five hours, Baca was required to stay on site and in his car at all times, meaning Baca worked for the Companies without being provided rest breaks at a minimum rate of a net ten consecutive minutes for each four-hour work period, or major fraction thereof. Baca was not provided and routinely had to forego rest breaks to perform his job duties.

130.   The Companies never paid Baca an hour of premium pay in lieu of a missed rest break in a day.

131.   As a direct and proximate result of the Companies' willful conduct, Baca has suffered harm and is entitled to an additional hour of premium pay for each shift during which he was not provided a rest break, in an amount to be ascertained at trial.

**THIRTEENTH CAUSE OF ACTION**

(Failure to Provide Accurate Itemized Wage Statements)

(Against Contego and Patriot)

132.   Baca realleges and incorporates by reference all prior Paragraphs as if fully set forth herein.

133.   The Companies were employers under the California Labor Code and applicable IWC Wage Order.

134.   California law presumes Baca was not exempt from the wage, hour, and working conditions rules provided in the Labor Code and applicable IWC Wage Order unless a specific exemption applies. No exemption applied to Baca's employment during the times that he was a Field Investigator.

135.   Labor Code section 226 requires an employer to keep accurate, itemized pay

statements. Each pay statement must accurately itemize: gross wages earned; the precise, actual number of hours and minutes worked by a non-exempt employee; all deductions; net wages earned; inclusive dates of the pay period; the name of the employee; the name and address of the legal entity that is the employer; and all applicable hourly rates in effect during the pay period.

136. As a Field Investigator, both after his demotion in July 2016 and before he was promoted to Case Manager in September 2013, the Companies routinely, knowingly, and intentionally failed to provide Baca, at the time of each payment of wages, an accurate itemized statement in writing that satisfied the requirements of Labor Code section 226.

137. As a direct and proximate result of the Companies' knowing and willful conduct, Baca has suffered harm and is entitled to the greater of actual damages as ascertained at trial or $50 for the initial pay period and $100 for each subsequent pay period, not exceeding an aggregate penalty of $4,000.

138. As a direct and proximate result of the Companies' willful, knowing, and intentional conduct, Baca is entitled to recover civil penalties pursuant to Labor Code section 226.3.

### FOURTEENTH  CAUSE OF ACTION

(Failure to Provide Employment and Personnel Files)

(Against Contego and Patriot)

139. Baca realleges and incorporates by reference all prior Paragraphs as if fully set forth herein.

140. Labor Code section 226(c) provides that an employer "who receives a written or oral request to inspect or copy records pursuant to subdivision (b) pertaining to a current or former employee shall comply with the request as soon as practicable, but no later than 21 calendar days from the date of the request."

141. Labor Code section 432 provides that an employee who "signs any instrument relating to the obtaining or holding of employment. . . shall be given a copy of the instrument upon request."

142. Labor Code section 1198.5(b)(1) provides that an "employer shall make the

1   contents of [an employee's] personnel records available for inspection to the current or former

2   employee, or his or her representative, at reasonable intervals and at reasonable times, but not

3   later than 30 calendar days from the date the employer receives a written request."

4   143.   Labor Code section 1198.5 also establishes an employee's right to recover

5   penalties for violation of the statute, together with costs of suit and attorneys' fees.

6   144.   On March 31, 2017, Baca requested, through his counsel and pursuant to Labor

7   Code sections 226, 432, and 1198.5, that the Companies provide copies of all his personnel and

8   employment files.

9   145.   The Companies provided Baca's files more than thirty days later, on May 1, 2017.

10   146.   As a direct and proximate result of the Companies' conduct, Baca is entitled to

11   statutory penalties and to his reasonable attorneys' fees and costs.

12   **FIFTEENTH CAUSE OF ACTION**

13   (Unlawful and Unfair Business Practices in Violation of Business & Professions Code § 17200,

14   *et seq.*, and Code of Civil Procedure § 526)

15   (Against Contego and Patriot)

16   147.   Baca realleges and incorporates by reference all prior Paragraphs as if fully set

17   forth herein.

18   148.   California Business & Professions Code sections 17200 *et seq.* prohibit acts of

19   unfair competition, which includes any "unlawful and unfair business practices."

20   149.   The Companies' conduct, as alleged herein, have been and continue to be unfair,

21   unlawful, and deleterious to Baca. Baca hereby seeks to enforce important rights within the

22   meaning of Code of Civil Procedure section 1021.5. Baca is a "person" within the meaning of the

23   Business & Professions Code section 17204, and therefore possesses standing to bring this suit

24   for injunctive relief and restitution.

25   150.   It is the policy of California to enforce minimum labor standards, to ensure that

26   employees are not required or permitted to work under substandard and unlawful conditions, and

27   to protect those employers who comply with the law from losing competitive advantage to other

28   employers who fail to comply with labor standards and requirements.

151.     Through the conduct alleged herein, the Companies acted contrary to these public policies and have engaged in unlawful and/or unfair business practices in violation of Business & Professions Code sections 17200 *et. seq.*, depriving Baca of the rights, benefits, and privileges guaranteed to employees under California law.

152.     The Companies regularly and routinely violated the California Labor Codes and/or applicable IWC Wage Order with respect to the allegations in this Complaint. Namely, the Companies regularly and routinely failed to provide Baca overtime pay, adequate meal periods, or adequate rest breaks as required by the California Labor Code and applicable IWC Wage Order.

153.     By engaging in theses unfair business practices, the Companies harmed Baca and, by that design and plan, gained an unfair competitive edge in the marketplace.

154.     Under Business & Professions Code section 17203, Baca is entitled to obtain restitution of these funds from the Companies on behalf of himself and others affected by the Companies' unfair business practices.

155.     Pursuant to Business & Professions Code section 17203, injunctive relief is necessary to prevent the Companies from continuing to engage in the unfair business practices alleged herein. Baca is informed and believes, and based thereon alleges, that the Companies and persons acting in concert with them have committed and will continue to commit the above unlawful acts unless restrained or enjoined by this Court. Unless the relief prayed for below is granted, a multiplicity of actions will result. Baca has no plain, speedy, or adequate remedy at law, in that pecuniary compensation would not afford adequate and complete relief. The above described acts will cause great and irreparable damage to Baca unless the Companies are restrained from committing further illegal acts.

156.     Baca's success in this action will result in the enforcement of important rights.

157.     Private enforcement of the rights enumerated in this complaint is necessary, as public agencies have only sought limited enforcement of those rights, if any. Baca, individually and by and through counsel, has incurred and continues to incur a financial burden in pursuing this action. Baca further seeks to enjoin the above-referenced unlawful actions under the Labor Code. Therefore, Baca seeks an award of attorneys' fees and costs of suit on this cause of action

pursuant to Code of Civil Procedure § 1021.5 and other applicable Labor Code sections.

## PRAYER FOR RELIEF

WHEREFORE, Baca prays for judgment against all Defendants, and each of them, as follows:

1. Compensatory damages, including but not limited to for losses resulting from humiliation, mental anguish, and emotional distress, in amounts to be proven at trial;

2. General and special damages, in amounts to be proven at trial;

3. Statutory penalties;

4. Interest according to law;

5. Exemplary and punitive damages, in amounts to be proven at trial;

6. Costs of suit;

7. Reasonable attorneys' fees; and

8. For such other and further relief as this Court may deem just and proper.

## REQUEST FOR TRIAL BY JURY

Baca hereby requests a trial by jury.


Respectfully submitted,

Date:   June 16, 2017                    SHEIK LAW, INC.


By:   _____
Mani Sheik
Attorneys for Plaintiff James Baca