Mani Sheik (SBN 245487)
SHEIK LAW, INC.
333 West Portal Ave., Suite A
San Francisco, CA 94127
Tel:  (415) 205-8490
Fax: (415) 796-0875
Email: mani@sheiklaw.us

Attorneys for Plaintiff
James Baca

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

James Baca, an individual,

                Plaintiff,

v.

Contego Investigative Services, Inc., a Delaware limited liability corporation; Patriot National, Inc., a Delaware corporation; Toni Gott, an individual; and DOES 1 through 20, inclusive,

                Defendants.

Case No.: 3:17-cv-03508-SK

**First Amended Complaint**

1. Harassment;
2. Harassment – Title VII;
3. Retaliation;
4. Disability Discrimination;
5. Failure to Accommodate;
6. Failure to Engage in Interactive Process;
7. Race, National Origin, Ancestry Discrimination;
8. Failure to Prevent Discrimination, Retaliation, and/or Harassment;
9. Intentional Infliction of Emotional Distress;
10. Failure to Pay All Earned Wages;
11. Failure to Pay Overtime Compensation in Violation of 29 U.S.C. §§ 206, 207, 216;
12. Failure to Provide Meal Periods or Compensation in Lieu Thereof;
13. Failure to Provide Rest Breaks or Compensation in Lieu Thereof;
14. Failure to Provide Accurate Itemized Wage Statements;
15. Failure to Provide Employment and Personnel Files;
16. Unlawful and Unfair Business Practices in Violation of Business & Professions Code § 17200, *et seq.*

**REQUEST FOR PUNITIVE DAMAGES; DEMAND FOR JURY TRIAL**

1    Plaintiff James Baca hereby amends the allegations and claims in this complaint against

2  Defendant Toni Gott only with respect to the intentional infliction of emotional distress cause of

3  action against her specifically, and does not amend or mean to amend any allegations or claims

4  against the Companies that were previously pled against them in the original complaint. Baca

5  further amends the complaint to add new causes of action against Gott and the Companies.

6              **JURISDICTION, INTRADISTRICT ASSIGNMENT, AND VENUE**

7    1.      This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. section

8  1332 (diversity jurisdiction), as there is diversity of citizenship among the parties—Plaintiff is a

9  California resident and Defendants are Delaware and Florida residents—and the matter in

10  controversy exceeds $75,000. The Court also has jurisdiction over Plaintiff's claim of violation of

11  the Fair Labor Standards Act ("FLSA") pursuant to 28 U.S.C. section 1331 (federal question

12  jurisdiction) and 29 U.S.C. section 216(b) over Plaintiff's California Labor Code, Fair

13  Employment and Housing Act ("FEHA"), and other related, state-law claims pursuant to 28

14  U.S.C. section 1367.

15    2.      Venue is proper in this District and Intradistrict Assignment is proper in the San

16  Francisco/Oakland Division (Loc. R. 3-2) because Plaintiff resides in and a substantial part of the

17  events giving rise to Plaintiff's claims, including but not limited to Plaintiff's employment with

18  the Companies, occurred in Contra Costa County, which is in this District.

19                            **THE PARTIES**

20    3.      Plaintiff James Baca ("Baca") is a resident of Contra Costa County, California.

21    4.      Defendant Contego Investigative Services, Inc. ("Contego") is a Delaware limited

22  liability corporation with a principal place of business in Fort Lauderdale, Florida. At all times

23  material hereto, Contego has conducted business in California and has been an employer whose

24  employees are engaged throughout California.

25    5.      Defendant Patriot National, Inc. ("Patriot") is a Delaware corporation with a

26  principal place of business in Fort Lauderdale, Florida. At all times material hereto, Patriot has

27  conducted business in California and has been an employer whose employees are engaged

28  throughout California. Patriot owns and operates Contego (collectively, the "Companies").

6.      Defendant Toni Gott is an individual who resides in Florida. At all times material hereto, Gott has been employed by and was a managing agent and a director or officer of the Companies.

7.      Baca is are unaware of the true names or capacities of the defendants sued herein under the fictitious names DOES 1 through 20, but prays for leave to amend and serve such fictitiously named defendants once their names and capacities become known.

8.      Baca is informed and believes, and thereon alleges, that DOES 1 through 20 are the partners, agents, owners, shareholders, managers, or employees of the named Defendants and were acting on behalf of the named Defendants at all relevant times. Baca is informed and believes, and thereon alleges, that each and all the conduct alleged herein was performed by, or is attributable to, the named Defendants and DOES 1 through 20, each acting as the agent for the other, with legal authority to act on the other's behalf. As such, Defendants Contego, Patriot, Gott, and DOES 1 through 20 are collectively referred to as "Defendants" and the term "Defendants" as used throughout this complaint also expressly includes DOES 1 through 20. The conduct of any and all Defendants were in accordance with, and represent the official policy of, each and every one of the Defendants.

9.      Baca is informed and believes, and thereon alleges, that at all times material hereto, Defendants, and each of them, were the agents of each and all other Defendants, and in doing the things alleged herein, were acting in the course and scope of such agency and with the permission and consent of their co-defendants such that each defendant is responsible in some actionable manner for the occurrences, omissions, and injuries alleged herein. Baca is informed and believes, and thereon alleges, that each of the Defendants is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, transactions, and damages alleged herein, and is therefore jointly and severally liable for those damages.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10.      Baca exhausted his administrative remedies by timely filing a complaint with the Department of Fair Employment and Housing ("DFEH") on June 12, 2017. Baca received a Right to Sue notice the same date. This action is being brought within one year of that notice.

11.     California Labor Code sections 2698 *et seq.*, i.e., the Private Attorneys Generals Act of 2004 ("PAGA"), authorizes aggrieved employees to sue, on their own behalf and on behalf of current or former employees, directly for various civil penalties under the California Labor Code. On November 30, 2017, Baca, on behalf of himself and other current or former employees, provided notice to the California Labor and Workforce Development Agency ("LWDA") and to the Companies (the latter by certified mail and a courtesy copy to Defendants' counsel), pursuant to California Labor Code section 2699.3(a), of the various violations alleged herein and the facts and theories to support the violations.

## **FACTUAL ALLEGATIONS**

12.     Baca was hired by Contego as a full-time Field Investigator on July 9, 2012. Baca has always been an exemplary employee. He has never been reprimanded, written up, or informed that he was anything but a good job, and there is nothing negative in his personnel file.

13.     Baca lives in and his territory covered Northern California. Baca was to be one of three full-time investigators in California, the other two living in and covering Southern California. Baca was therefore Contego's only full-time investigator in Northern California. Baca's duties as a Field Investigator included conducting surveillance (commonly referred to as "surveillance" cases) and taking statements for workers' compensation claims (commonly referred to as "statement" cases). These duties are typical of other current and former investigators in California. Generally, investigators are assigned cases within an hour or so of home.

14.     Throughout Baca's employment, the Companies' policy has been to credit as billable time for time spent traveling to and from a case and for time spent writing reports only on statement cases but not on surveillance cases, even though there is no significant or functional difference in an investigator's duties between surveillance and settlement cases. Thus, as an example, an investigator assigned to an eight-hour statement case an hour away from home would be credited and paid for the eight-hour assignment plus two hours of travel time and the time it took to write a report (generally, one or two hours). The same investigator assigned to an eight-hour stakeout/surveillance case an hour away from home, however, would only receive credit and

1   pay for the eight-hour assignment but not for the additional three or four hours of work performed

2   that day.

3          15.    Until December 2016, the Companies classified investigators, including Baca, as

4   exempt and thus did not pay for overtime work or pay premium pay for missed meal periods or

5   rest breaks.

6          16.    In December 2016, citing alleged "recent changes in the US Labor law

7   regulations," the Companies reclassified investigators, including Baca, as non-exempt. The

8   Companies did not, however, provide retroactive pay for worked but unpaid overtime or for

9   missed meal periods and rest breaks. And the Companies still continue their illegal practice of not

10  paying for travel time or report-writing time on surveillance cases.

11         17.    On September 26, 2013, Baca was promoted to Case Manager and given a 5%

12  raise. For a few months, Baca was asked to manage different regions throughout the United

13  States, but eventually he was given the entire California region to manage—one of the busiest and

14  most profitable regions for the Companies. Baca's new manager became Gott, Contego's then

15  Director of Operations.

16         18.    As his region grew busier, in November 2014 Baca was told he could use, for a

17  few days a week, one of the investigators who worked under him to assist with paperwork. Baca

18  selected Anthony Guerrero, his most experienced, and a very capable, employee for the

19  promotion. Baca had no issues with Guerrero or his work product. Gott, however, did.

20         19.    In or around June 2015, Gott told Baca to choose another of his employees to help

21  him, because she did not like that Guerrero was speaking out about workplace conditions—

22  specifically that the Companies were engaging in fraudulent and illegal conduct, were not paying

23  investigators for all hours worked, and were not reimbursing investigators for all travel expenses.

24  Baca did not agree with the decision to retaliate against and, in effect, demote Guerrero because

25  of his often valid criticisms about the work environment, but was forced by Gott to choose a new

26  assistant. Baca selected Sean Miner, who was newer to Contego than Guerrero but had a lot of

27  necessary leadership skills nonetheless.

28         20.    In October 2015, Guerrero informed Baca (as his supervisor) that he was spending

more gas money per month then he was being reimbursed by the Companies. Baca had previously heard similar complaints from other investigators he supervised and had brought those complaints to Gott's attention. He did so again after Guerrero's complaint. Rather than address the valid concerns, Gott became angry and said she was tired of Guerrero's "whining" and "complaining." Gott then said she wanted Baca to harass Guerrero so thoroughly that he would quit. Specifically, Gott wanted Baca to make Guerrero's life so "miserable" by putting him on surveillance cases far away from his house that Guerrero would simply quit. Baca was quite surprised by the directive and refused. Gott was insistent, however. She wanted Baca to create such an intolerable workplace that Guerrero would simply quit. And she would not drop her campaign of revenge.

21.    For example, Gott had Guerrero, who lives in Valencia, California, assigned to surveillance jobs in Calexico, California—on the border with Mexico and over 250 miles each way—even though there were many investigators who lived much closer to Calexico. On one occasion, Gott had Guerrero assigned to a surveillance case in Calexico and to another surveillance case the next day in Santa Maria—nearly 150 miles in the opposite direction from Guerrero's home. And because Gott was sending Guerrero all over the state on surveillance cases, Guerrero was even more "tortured" because he would not be paid for his travel time. In fact, Guerrero's work assignments changed from approximately 90% statement cases conducted near his home before he complained to 50% surveillance cases far away from home following his complaint.

22.    The change to Guerrero's case assignments was made by Gott. Indeed, when Sean Miner voiced his concerns to her about Guerrero having to drive six hours to Calexico, Gott responded "I just thought he wanted to be closer to Mexico, closer to his people. So that's why I'm giving him all the Calexico cases."

23.    Gott continued her campaign to drive away Guerrero for five or six months. But Guerrero refused to quit. So Gott drummed up a pretense to fire Guerrero. In or around November or December 2015, Gott and Human Resources manager Jamie O'Connor called Baca to explain that they believed Guerrero had been overbilling clients for phone calls and, thus, improperly padding his timecard and pay. Gott and O'Connor also accused Guerrero of breaking company

1   rules by using his own cell phone, and wanted Baca to provide support for their allegations. Baca

2   explained that he did not believe Guerrero had done anything wrong, and noted investigators

3   often use personal cell phones when their Contego-issued phones did not receive a signal but

4   phones from different providers did. Gott and O'Connor would have none of it. They wanted

5   Guerrero gone, were willing to drum up false or flimsy pretenses to do it, and wanted Baca to

6   cooperate with their campaign. Again Baca refused.

7         24.    After that call, Baca knew with certainty that Gott was on a witch hunt for

8   Guerrero. And, sure enough, in mid-December 2015, Baca was informed that Guerrero was being

9   terminated. Baca had been Guerrero's immediate supervisor for approximately two years and

10   never had a problem with Guerrero. Baca did not recommend or agree with the termination and

11   believed it was an illegal termination brought about solely by Gott's dislike of Guerrero's

12   speaking out about workplace violations and illegal conduct by the Companies.

13         25.    Over the ensuing winter holidays, Baca took a pre-planned vacation, during which

14   Miner acted as the regional manager in his absence. When Baca returned, Miner said that he

15   (Miner) had recently spoken with Gott and told her he needed rest because he had been working

16   so many overtime hours the previous weeks, for which he was not paid. Miner had also

17   complained that he had found the Companies were changing investigative reports he wrote to add

18   information that was not true, including charges to clients that were unearned, and explained that

19   the Companies were engaging in fraudulent practices. Miner noted that his saying these things to

20   Gott seemed to upset her very much. When Baca then spoke with Gott, Gott was very upset with

21   Miner. Gott told Baca that she wanted to "throat punch" Miner, a common term Gott uses about

22   people she does not like. Either during this call or another call shortly after, Gott said she wanted

23   Baca to "torture" Miner any way Baca wanted so that Miner would quit. Once again, as with

24   Guerrero, Gott wanted Baca to use his power as regional manager to send Miner on cases far

25   from his home and on weekends just because the employee spoke out about workplace violations.

26   Though it is not uncommon for investigators to work weekends, Gott expressly wanted and

27   instructed Baca to force Miner to work weekends just to harass him and make him want to quit.

28         26.    Thus, for example, a short while later, when Miner requested of Baca to have a

1    weekend day off later that month or to work nearby so he could attend his young daughter's

2    birthday party, Gott instructed Baca to assign Miner a case several hours away for the day before

3    the party just so Miner would miss his daughter's birthday. Baca explained he had already

4    approved Miner to work a case close to his home. Gott did not care. She said Baca had "no

5    choice" but to assign the far away case to Miner so that, if he did not work it, she could terminate

6    Miner for abandoning his job. Thus, Gott assigned Miner, who lives in Roseville, to work

7    surveillance cases in Fresno on Thursday (180 miles and 3 hours away, each way), Clear Lake on

8    Friday (120 miles and 2 hours away, each way), and then Fresno again on Saturday, the day of his

9    daughter's birthday—all on top of the 8 hours he was to work during each day. And Miner was

10   not even paid for his travel time because Gott made sure to assign him surveillance cases.

11          27.    Gott's comments and threats to and through Baca are wholly in line with

12   statements she apparently made to Miner directly, including that "When [Miner] complained to

13   Gott about not being paid properly for the excessive hours he worked, Gott told him his life was

14   going to get much worse if he kept complaining." (*Miner v. Contego Investigative Services, Inc.*;

15   E.D.Cal. Case No. 2:16-at-00808; Document 1 (filed 07/08/16) at ¶ 30) Thus, "Contego retaliated

16   against [Miner] for complaining about its unlawful compensation practices by assigning him to

17   investigations that required extensive travel and assignments requiring surveillance on holidays,

18   such as Christmas." (*Id.* at ¶ 31)

19          28.    Also in January 2016, Baca's region was assigned a case with instructions to

20   obtain a signed medical release from a Hispanic female claimant. Baca assigned the case to a

21   local investigator, who met with the claimant and she printed her signature because she did not

22   know how to sign in cursive. Baca's immediate supervisor by this time, Director of Operations

23   Seth Markham, became upset and said there was no reason the claimant could not sign in cursive,

24   and that "the Mexicans" need to learn how to sign in English.

25          29.    Baca, who is Hispanic, became very upset and was very offended by Markham's

26   blatantly racist comment, and said as much to Markham. When Baca got off the phone with

27   Markham, he immediately called Gott, who had by this time been promoted to Vice President of

28   Operations, and left a voicemail explaining what Markham had said and that he (Baca) was very

1   upset and wanted to file a complaint with Gott against Markham. When Gott called back, Baca

2   explained again what happened. Gott agreed Markham should not have brought up that the

3   claimant was Mexican and that she would talk with Markham. Upon information and belief, Baca

4   alleges that no formal investigation was conducted. Indeed, Baca, the complainant, was never

5   interviewed following his complaint. Nor was Baca ever given a response on what action the

6   Companies took as a result of his complaint.

7       30.     This was not Markham's only discriminatory comment. In late March 2017,

8   Markham called Baca "old." Baca was Contego's oldest Case Manager.

9       31.     By this time, Baca was experiencing significant stress and psychological strain as a

10  result of the situations with Miner—now the second investigator in a few months that he was

11  forced to harass and "torture" in retaliation for the investigator's raising legitimate concerns about

12  the Companies' labor practices—and the racist incident dealing with his immediate supervisor.

13  Baca began having anxiety attacks over these matters, and contacted Naomi Barnett in Human

14  Resources to request time off. Baca was given February 2016 off without pay, but was never

15  informed of his rights during this process. The Companies also failed to engage in the interactive

16  process with Baca, or to offer any reasonable accommodations. Baca was only told he would

17  come back to his management position upon return. But even that was not true.

18      32.     On July 7, 2016, a few months after Baca returned from leave, Gott told Baca he

19  was no longer "working out" as a manager and was therefore losing his Case Manager position.

20  Gott gave Baca the "choice" of managing a different region or going back into the field as an

21  investigator. After ending the call with Gott, Baca was so nervous and scared that he had to go to

22  urgent care for an anxiety attack.

23      33.     Baca had no real "choice." Gott was well aware that Baca's wife was undergoing

24  cancer treatment at that time, so there was simply no chance he would accept a change in position

25  that would require him to be on the road. So, in reality, Gott was setting up the situation to make

26  it look like Baca had some kind of "choice." He did not. The bottom line is that Gott demoted

27  Baca to harass and retaliate against him for refusing to harass, intimidate, and torture employees.

28      34.     The next day, July 8 (a Friday), Baca contacted Barnett to complain formally that

Gott was harassing and retaliating against him, explaining what Gott had wanted him to do to Guerrero and Miner, and to ask to open a workers' compensation claim. Barnett expressed surprise that Baca's position was changing since she had received no paperwork to that effect, and said she would start an investigation the following Monday and would inform Contego's President, Jason Linn. Baca said he was worried he would lose his job and was nervous to go back to work on Monday, and expressly requested that he not be harassed or retaliated against on Monday (or thereafter).

35.     On Tuesday, July 12, Baca saw his primary care physician, who immediately took him off work due to stress and anxiety. Baca was ultimately released back to work on October 31, 2016. The day he returned, Baca learned he already been retaliated against, as he was demoted back to Field Investigator while on disability leave. Later, in December, the Companies retaliated further by reducing his compensation by more than 15%. When Baca asked his new manager, Ivan Merida, why his pay dropped so much, Merida said Baca will have to work lots of overtime to get back to where his salary used to be.

36.     What's more, on the very day he returned, Gott began to do to Baca what she had done to Guerrero and Miner to torture them into quitting. Baca's very first assignment was to work a three-day surveillance case two hours away from his home, even though another surveillance investigator lived just thirty minutes away from the subject. Baca's second assignment was in Bakersfield—260 miles from his home. In the 4.5 years Baca had been employed by the Companies, a Northern California investigator had never before worked a Bakersfield case, which makes sense since even a Los Angeles investigator would be just 1.5 hours away.

37.     These initial assignments, particularly the Bakersfield assignment, were issued to Baca even though the Companies knew, and his supervisors were informed by Barnett herself, that his doctor had indicated Baca had a work restriction of needing to take a break every two hours to get up and walk and stand.

38.     As a Field Investigator, both after his demotion in July 2016 and before he was promoted to Case Manager in September 2013, Baca, like all other current and former

1  investigators in California, was routinely caused, suffered, and permitted to work in excess of

2  eight hours a day and/or forty a week without being paid for all hours worked, including overtime

3  and without being provided timely meal periods and rest breaks, or premium pay in lieu thereof.

4  Indeed, while on surveillance assignments, which often extended for more than five hours, Baca

5  was required by the Companies to stay on site and in his car at all times, meaning he could not

6  take meal or rest breaks as required by law.

7       39.    On January 7, 2017, Baca was assigned a surveillance case in Manteca, California,

8  in the middle of a torrential, week-long rainstorm. The job required that he get license plate

9  information, so he had to get out of his car to do the job. As he was walking, Baca tripped over a

10  sidewalk that was raised from a tree root and ended up hurting his knee, hip, back, and hand.

11  Baca went to the local emergency room for his injuries, and was off work for several weeks as a

12  result.

13      40.    On January 31, 2017, Baca received the results of the investigation of his

14  complaint that Gott had harassed him. The Companies' Executive Vice President of

15  Administration & Special Counsel wrote: "The Human Resources department has done a

16  thorough investigation of your concerns & has interviewed the employees involved. Our

17  investigation is now complete. Although privacy considerations limit our ability to share

18  confidential information with you about other employees, I can tell you that the **appropriate**

19  **action has been taken to ensure that such conduct does not <u>repeat</u> itself.** [¶] You requested

20  that you no longer report to Toni Gott. When given options, you selected the role of Field

21  Investigator reporting to Ivan Merida. . . [¶] Should you experience any further problems, please

22  feel free to let me know or to speak with another trusted member of management. Any **<u>future</u>**

23  **misconduct** including any retaliation, will be dealt with swiftly and severely as the circumstances

24  dictate." (Emphases added) In effect, then, the Companies' internal investigation concluded that

25  Gott had harassed Baca since "appropriate action" had to be "taken to ensure that such conduct

26  [i.e., harassment] does not repeat itself."

27      41.    Baca returned to work in March, but with certain restrictions of which the

28  Companies and Gott are aware. Indeed, Barnett wrote Baca on February 15 that "We are able to

accommodate your new work restrictions of 'frequent change of position as tolerated & must take a stretch break for 5 minutes after every 60 minutes.'" But the Companies and Gott have failed to make those accommodations available for Baca. Instead, the Companies and Gott are now following their tried and true formula for retaliation and harassment. Indeed, Baca would never have been on injured in January had the Companies and Gott not harassed and retaliated against him by demoting him to Field Investigator. Thus, any and all injuries and damages Baca sustained as a result of the January incident in Manteca occurred as a direct and proximate result of the Companies' and Gott's misconduct.

42.     Since Baca returned from leave—indeed, since he returned from his first leave on October 31—the Companies and Gott have continued to make his job so unbearable as to make him quit, just like they did with Guerrero and Miner. And, just like with Guerrero and Miner, the Companies and Gott have changed even the type of cases Baca now works on. Before he refused to harass others on Gott's behalf and complained to HR, the vast majority of cases Baca worked were statement cases (for which his travel and report-writing time was paid) near his home. Afterwards, his case load has shifted to nearly all surveillance cases far from his home, for which his travel and report-writing time does not get paid.

43.     For example, just like they did when Baca returned from his first leave in October 2016, right after he returned from his second leave in March 2017, Baca was assigned to work a surveillance case in Oroville, California. The assignment required Baca to drive 150 miles each way that day, even though another investigator lives much closer to the location and was available during that same timeframe. All told, Baca was in a car 20 hours that day, greatly exacerbating his injuries and flaunting the accommodations of providing "frequent change of position" or "a stretch break for 5 minutes after every 60 minutes." What's more, even if another investigator was not available, the Companies could readily have hired contract investigators for the job, as Baca had done many, many times when he was the regional Case Manager. Either option would have been more efficient for both the Companies and their client. But the Companies and Gott chose deliberately to "torture" Baca by giving him a job that required extensive driving, even though they are fully aware that Baca is restricted from sitting in place for

1   more than an hour.

2      44.   Similarly, in early March 2017, Baca was assigned a job with instructions that he

3   work a split day, meaning work four hours and, if he could not locate the subject of the

4   investigation, go home and return in the evening. The assignment effectively required Baca to

5   leave home at 4:00 a.m., come back mid-day, and then work again in late evening. In nearly five

6   years with the Companies, Baca has never before been asked to work a split day or assigned any

7   of his staff to do so when he was Case Manager. That the job was assigned wholly to harass and

8   retaliate is made evident by the fact that another investigator lives closer than Baca to the location

9   and, even more blatantly, there was another job available to assign to Baca the same day just 10-

10  15 minutes from Baca's house with a 7:00 a.m. start time. What's more, the assignment required

11  Baca to have to cancel two medical appointments about which Defendants had long known,

12  further delaying his recovery and injuring him. And, as an overtly malicious and capricious act,

13  the assignment flew in the face of Baca's orders not to drive because he is taking medications that

14  affect his alertness. The Companies and Gott were and are well aware of this restriction, yet

15  deliberately assigned Baca a case far from home and put him in a position where he may hurt

16  himself or the public at large.

17     45.   Throughout March, the Companies and Gott continued to assign Baca jobs (often

18  on less than 24-hours' notice) that required him to cancel numerous medical appointments, about

19  which the Companies and Gott knew. These assignments continued the harassing and retaliatory

20  pattern meant to "torture" Baca into quitting.

21     46.   All of this may well explain why, when the Companies' lawyers contacted Baca to

22  ask that he testify in Guerrero's and Miner's lawsuits (each having sued the Companies

23  separately) and Baca said he would do as requested but that he will not be a good witness for the

24  Companies because he would testify truthfully under oath that Defendants harassed and retaliated

25  against the former employees, the Companies' attorneys told Baca that he was a "radioactive"

26  employee, and refused to call him as a witness.

27     47.   Upon information and belief, Baca alleges that even though Gott was no longer his

28  immediate supervisor following the conclusion of the investigation into his complaint of

harassment against her, Gott has known about and, in fact, ordered these changes to his work conditions—starting from Baca's demotion from Case Manager back to Field Investigator in July 2016 and through the deliberate reassignment of his caseload from statement cases close to his home to surveillance cases far from his home, assigned in knowing and willful violation of Baca's work restrictions. Gott is using Ivan Merida to "torture" Baca, like she forced Baca to torture others. Indeed, that Gott knew and ordered this retaliation is consistent with her admission to Sean Miner that <u>she</u> was sending Anthony Guerrero to Calexico even though Baca was Guerrero's immediate supervisor at that time.

48.     The Companies have known about but tolerated Gott's harassing conduct for several years. Both Guerrero and Miner complained to Jamie O'Connor in HR, but nothing was done to investigate their claims. Rather than punish or even fire Gott, the Companies rewarded her with promotions and salary raises.

49.     On March 31, 2017, Baca requested, through his counsel and pursuant to Labor Code sections 226, 432, and 1198.5, that the Companies provide copies of all his personnel and employment files. The Companies provided Baca's files on May 1, 2017.

## FIRST CAUSE OF ACTION

(Harassment)

(Against Contego and Patriot)

50.     Baca realleges and incorporates by reference all prior Paragraphs as if fully set forth herein.

51.     At all times material hereto, the Companies were employers and Baca an employee as defined by the Fair Employment and Housing Act ("FEHA").

52.     FEHA requires employers and employees to refrain from harassing an employee based on the employee's disability, race, national origin, ancestry, and/or age, among other reasons, and to provide each employee with a work environment free of harassment.

53.     Defendants, and each of them, subjected Baca to unwanted harassment because of his disability, race, national origin, ancestry, and/or age, as discussed above. Each of the Defendants was aware of and participated in this harassment.

54.     The harassing conduct was so severe and pervasive as to alter the conditions of Baca's employment and create a hostile and abusive work environment that affected tangible aspects of Baca's compensation, terms, conditions, and/or privileges of employment. Defendants, and each of them, created and allowed to exist a hostile work environment for Baca and harassed him because of his disability, race, national origin, ancestry, and/or age.

55.     The harassing conduct was so widespread and persistent that a reasonable person in Baca's circumstances would have considered the work environment to be hostile and abusive, and Baca in fact considered the work environment created by Defendants, and each of them, to be hostile and abusive.

56.     Defendants, and each of them, including supervisors, managers, and/or agents of the Companies, and each of them, knew or should have known of the harassing conduct and failed to take immediate and appropriate corrective action.

57.     Defendants, and each of them, are vicariously and strictly liable under FEHA for disability-, race-, national origin-, ancestry-, and/or age-based harassment of Baca by supervisors with immediate or successively higher authority over him within the meaning of California Government Code Section 12926(s), including but not limited Gott.

58.     As a direct, foreseeable, and legal result of the Defendants' conduct, Baca has suffered and continues to suffer substantial losses in employment potential and in earnings, bonuses, deferred compensation, and other employment benefits, and has suffered and continues to suffer substantial embarrassment, extreme and severe humiliation, mental anguish, and emotional distress, all to his damage in an amount according to proof. Baca has incurred and will incur medical and other incidental expenses for treatment by health professionals.

59.     Defendants committed the conduct alleged herein maliciously, fraudulently, and oppressively with the wrongful intention of injuring Baca, from a willful improper motive amounting to malice, and in conscious disregard of Baca's rights and for the deleterious consequences of the Defendants' conduct. Defendants had actual and constructive knowledge of the conduct described and alleged herein and, through their managing agents and/or supervisors,

1  authorized, condoned, and ratified the unlawful conduct of all of the other Defendants named in

2  this action. Baca is thus entitled to recover punitive damages in an amount according to proof.

3      60.     As a result of Defendants' conduct as alleged herein, Baca is entitled to reasonable

4  attorneys' fees and costs of suit.

5                              **SECOND CAUSE OF ACTION**

6                              (Harassment – Title VII)

7                              (Against Contego and Patriot)

8      61.     Baca realleges and incorporates by reference all prior Paragraphs as if fully set

9  forth herein.

10     62.     At all times material hereto, the Companies were employers and Baca an employee

11 as defined by Title VII of the Civil Rights Act (42 U.S.C. § 2000e *et seq.*, "Title VII").

12     63.     Under controlling Ninth Circuit case law, Title VII requires employers and

13 employees to provide each employee with a work environment free of harassment and to refrain

14 from harassing an employee as retaliation for engaging in protected activity.

15     64.     Baca engaged in protected activity by refusing to engage in illegal conduct, by

16 complaining and informing the Companies of the abusive, discriminatory, and harassing behavior

17 of a manager, Gott, and by requesting that the Companies take appropriate action to remedy the

18 situation, all as described above. Baca's refusal to engage in such illegal activity and his

19 communications constitute protected activity in that he was opposing conduct that he reasonably

20 and in good faith believed to be unlawful.

21     65.     Defendants, and each of them, subjected Baca to unwanted harassment as

22 retaliation for engaging in protected activity. Each of the Defendants was aware of and

23 participated in this harassment.

24     66.     The harassing conduct was so severe and pervasive as to alter the conditions of

25 Baca's employment and create a hostile and abusive work environment that affected tangible

26 aspects of Baca's compensation, terms, conditions, and/or privileges of employment. Defendants,

27 and each of them, created and allowed to exist a hostile work environment for Baca and harassed

28 him for engaging in protected activity.

67.     The harassing conduct was so widespread and persistent that a reasonable person in Baca's circumstances would have considered the work environment to be hostile and abusive, and Baca in fact considered the work environment created by Defendants, and each of them, to be hostile and abusive.

68.     Defendants, and each of them, including supervisors, managers, and/or agents of the Companies, and each of them, knew or should have known of the harassing conduct and failed to take immediate and appropriate corrective action.

69.     As a direct, foreseeable, and legal result of the Defendants' conduct, Baca has suffered and continues to suffer substantial losses in employment potential and in earnings, bonuses, deferred compensation, and other employment benefits, and has suffered and continues to suffer substantial embarrassment, extreme and severe humiliation, mental anguish, and emotional distress, all to his damage in an amount according to proof. Baca has incurred and will incur medical and other incidental expenses for treatment by health professionals.

70.     Defendants committed the conduct alleged herein maliciously, fraudulently, and oppressively with the wrongful intention of injuring Baca, from a willful improper motive amounting to malice, and in conscious disregard of Baca's rights and for the deleterious consequences of the Defendants' conduct. Defendants had actual and constructive knowledge of the conduct described and alleged herein and, through their managing agents and/or supervisors, authorized, condoned, and ratified the unlawful conduct of all of the other Defendants named in this action. Baca is thus entitled to recover punitive damages in an amount according to proof.

71.     As a result of Defendants' conduct as alleged herein, Baca is entitled to reasonable attorneys' fees and costs of suit.

### THIRD  CAUSE OF ACTION

(Retaliation)

(Against Contego and Patriot)

72.     Baca realleges and incorporates by reference all prior Paragraphs as if fully set forth herein.

73.     At all times material hereto, the Companies were employers and Baca an employee

1    as defined by FEHA.

2         74.    FEHA makes unlawful an employer's discriminating against an employee because

3    the person engaged in protected activity.

4         75.    Baca engaged in protected activity by refusing to engage in illegal conduct, by

5    complaining and informing the Companies of the abusive, discriminatory, and harassing behavior

6    of a manager, Gott, and by requesting that the Companies take appropriate action to remedy the

7    situation, all as described above. Baca's refusal to engage in such illegal activity and his

8    communications constitute protected activity in that he was opposing conduct that he reasonably

9    and in good faith believed to be unlawful.

10        76.    The Companies have long known about Gott's misconduct but have condoned and

11   allowed it to continue. Indeed, Baca is the third employee subjected to Gott's illegal, harassing,

12   and retaliatory conduct.

13        77.    Baca was retaliated against for engaging in such protected activity in that Baca

14   was subjected to adverse treatment, denied equal treatment, denied job benefits and opportunities,

15   denied training, denied promotion, demoted, denied accommodation, not engaged with in an

16   interactive process, and otherwise harassed and discriminated and retaliated against on account of

17   his engaging in protected activity. Each of the Defendants was aware of and participated in this

18   retaliation.

19        78.    As a direct, foreseeable, and legal result of the Defendants' conduct, Baca has

20   suffered and continues to suffer substantial losses in employment potential and in earnings,

21   bonuses, deferred compensation, and other employment benefits, and has suffered and continues

22   to suffer substantial embarrassment, extreme and severe humiliation, mental anguish, and

23   emotional distress, all to his damage in an amount according to proof. Baca has incurred and will

24   incur medical and other incidental expenses for treatment by health professionals.

25        79.    Defendants committed the conduct alleged herein maliciously, fraudulently, and

26   oppressively with the wrongful intention of injuring Baca, from a willful improper motive

27   amounting to malice, and in conscious disregard of Baca's rights and for the deleterious

28   consequences of the Defendants' conduct. Defendants had actual and constructive knowledge of

the conduct described and alleged herein and, through their managing agents and/or supervisors,

authorized, condoned, and ratified the unlawful conduct of all of the other Defendants named in

this action. Baca is thus entitled to recover punitive damages in an amount according to proof.

80.     As a result of Defendants' conduct as alleged herein, Baca is entitled to reasonable

attorneys' fees and costs of suit.

## FOURTH CAUSE OF ACTION

(Disability Discrimination)

(Against Contego and Patriot)

81.     Baca realleges and incorporates by reference all prior Paragraphs as if fully set

forth herein.

82.     At all times material hereto, the Companies were employers and Baca an employee

as defined by FEHA.

83.     Defendants' conduct, as alleged above, constitutes unlawful discrimination on the

basis of physical and/or mental disability and/or medical condition under Government Code

section 12940 in that Baca was subjected to adverse treatment, denied equal treatment, denied job

benefits and opportunities, denied training, denied promotion, demoted, denied accommodation,

not engaged with in an interactive process, and otherwise harassed and discriminated and

retaliated against on account of his physical and/or mental disability and/or medical condition.

Each of the Defendants was aware of and participated in this discrimination. Defendants' conduct

was not based upon a bona fide occupational qualification.

84.     As a direct, foreseeable, and legal result of the Defendants' conduct, Baca has

suffered and continues to suffer substantial losses in employment potential and in earnings,

bonuses, deferred compensation, and other employment benefits, and has suffered and continues

to suffer substantial embarrassment, extreme and severe humiliation, mental anguish, and

emotional distress, all to his damage in an amount according to proof. Baca has incurred and will

incur medical and other incidental expenses for treatment by health professionals.

85.     Defendants committed the conduct alleged herein maliciously, fraudulently, and

oppressively with the wrongful intention of injuring Baca, from a willful improper motive

1   amounting to malice, and in conscious disregard of Baca's rights and for the deleterious

2   consequences of the Defendants' conduct. Defendants had actual and constructive knowledge of

3   the conduct described and alleged herein and, through their managing agents and/or supervisors,

4   authorized, condoned, and ratified the unlawful conduct of all of the other Defendants named in

5   this action. Baca is thus entitled to recover punitive damages in an amount according to proof.

6        86.     As a result of Defendants' conduct as alleged herein, Baca is entitled to reasonable

7   attorneys' fees and costs of suit.

8                              **FIFTH   CAUSE OF ACTION**

9                                 (Failure to Accommodate)

10                                (Against Contego and Patriot)

11       87.     Baca realleges and incorporates by reference all prior Paragraphs as if fully set

12  forth herein.

13       88.     At all times material hereto, the Companies were employers and Baca an employee

14  as defined by FEHA.

15       89.     FEHA requires an employer to make reasonable accommodations for an

16  employee's disability to enable the employee to perform a position's essential functions, unless

17  doing so would produce undue hardship to the employer's operations.

18       90.     Baca notified Defendants of his physical and/or mental disability and/or medical

19  condition and of his need for a reasonable accommodation, as described above. However,

20  Defendants failed to provide Baca a reasonable accommodation, and instead demoted him and

21  otherwise harassed and discriminated and retailed against him. Accommodating Baca's physical

22  and/or mental disability and/or medical condition would not have been an undue hardship.

23       91.     As a direct, foreseeable, and legal result of the Defendants' conduct, Baca has

24  suffered and continues to suffer substantial losses in employment potential and in earnings,

25  bonuses, deferred compensation, and other employment benefits, and has suffered and continues

26  to suffer substantial embarrassment, extreme and severe humiliation, mental anguish, and

27  emotional distress, all to his damage in an amount according to proof. Baca has incurred and will

28  incur medical and other incidental expenses for treatment by health professionals.

92.     Defendants committed the conduct alleged herein maliciously, fraudulently, and oppressively with the wrongful intention of injuring Baca, from a willful improper motive amounting to malice, and in conscious disregard of Baca's rights and for the deleterious consequences of the Defendants' conduct. Defendants had actual and constructive knowledge of the conduct described and alleged herein and, through their managing agents and/or supervisors, authorized, condoned, and ratified the unlawful conduct of all of the other Defendants named in this action. Baca is thus entitled to recover punitive damages in an amount according to proof.

93.     As a result of Defendants' conduct as alleged herein, Baca is entitled to reasonable attorneys' fees and costs of suit.

### SIXTH CAUSE OF ACTION

(Failure to Engage in Interactive Process)

(Against Contego and Patriot)

94.     Baca realleges and incorporates by reference all prior Paragraphs as if fully set forth herein.

95.     At all times material hereto, the Companies were employers and Baca an employee as defined by FEHA.

96.     FEHA makes it an unlawful employment practice to fail to engage in a timely, good-faith, interactive process with an employee to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee with a known physical and/or mental disability and/or medical condition.

97.     Baca notified Defendants of his physical and/or mental disability and/or medical condition and of his need for a reasonable accommodation, as described above. However, Defendants failed to engage in a timely, good-faith, interactive process with Baca to determine effective reasonable accommodations, and instead demoted him and otherwise harassed and discriminated and retailed against Baca.

98.     As a direct, foreseeable, and legal result of the Defendants' conduct, Baca has suffered and continues to suffer substantial losses in employment potential and in earnings, bonuses, deferred compensation, and other employment benefits, and has suffered and continues

1   to suffer substantial embarrassment, extreme and severe humiliation, mental anguish, and

2   emotional distress, all to his damage in an amount according to proof. Baca has incurred and will

3   incur medical and other incidental expenses for treatment by health professionals.

4        99.    Defendants committed the conduct alleged herein maliciously, fraudulently, and

5   oppressively with the wrongful intention of injuring Baca, from a willful improper motive

6   amounting to malice, and in conscious disregard of Baca's rights and for the deleterious

7   consequences of the Defendants' conduct. Defendants had actual and constructive knowledge of

8   the conduct described and alleged herein and, through their managing agents and/or supervisors,

9   authorized, condoned, and ratified the unlawful conduct of all of the other Defendants named in

10  this action. Baca is thus entitled to recover punitive damages in an amount according to proof.

11       100.   As a result of Defendants' conduct as alleged herein, Baca is entitled to reasonable

12  attorneys' fees and costs of suit.

13                       **SEVENTH  CAUSE OF ACTION**

14                   (Race, National Origin, Ancestry Discrimination)

15                        (Against Contego and Patriot)

16       101.   Baca realleges and incorporates by reference all prior Paragraphs as if fully set

17  forth herein.

18       102.   At all times material hereto, the Companies were employers and Baca an employee

19  as defined by FEHA.

20       103.   Defendants' conduct, as alleged above, constitutes unlawful discrimination on the

21  basis of age under Government Code section 12940 in that Baca was subjected to adverse

22  treatment, denied equal treatment, denied job benefits and opportunities, denied training, denied

23  promotion, demoted, denied accommodation, not engaged with in an interactive process, and

24  otherwise harassed and discriminated and retaliated against on account of his race, national

25  origin, and/or ancestry. Each of the Defendants was aware of and participated in this

26  discrimination. Defendants' conduct was not based upon a bona fide occupational qualification.

27       104.   As a direct, foreseeable, and legal result of the Defendants' conduct, Baca has

28  suffered and continues to suffer substantial losses in employment potential and in earnings,

1    bonuses, deferred compensation, and other employment benefits, and has suffered and continues

2    to suffer substantial embarrassment, extreme and severe humiliation, mental anguish, and

3    emotional distress, all to his damage in an amount according to proof. Baca has incurred and will

4    incur medical and other incidental expenses for treatment by health professionals.

5          105.    Defendants committed the conduct alleged herein maliciously, fraudulently, and

6    oppressively with the wrongful intention of injuring Baca, from a willful improper motive

7    amounting to malice, and in conscious disregard of Baca's rights and for the deleterious

8    consequences of the Defendants' conduct. Defendants had actual and constructive knowledge of

9    the conduct described and alleged herein and, through their managing agents and/or supervisors,

10   authorized, condoned, and ratified the unlawful conduct of all of the other Defendants named in

11   this action. Baca is thus entitled to recover punitive damages in an amount according to proof.

12         106.    As a result of Defendants' conduct as alleged herein, Baca is entitled to reasonable

13   attorneys' fees and costs of suit.

14                              **EIGHTH CAUSE OF ACTION**

15               (Failure to Prevent Discrimination, Retaliation, and/or Harassment)

16                           (Against Contego and Patriot)

17         107.    Baca realleges and incorporates by reference all prior Paragraphs as if fully set

18   forth herein.

19         108.    At all times material hereto, Contego and Patriot were employers and Baca an

20   employee as defined by FEHA.

21         109.    FEHA requires the Companies take all reasonable steps necessary to prevent

22   discrimination, harassment, and retaliation in the workplace, and to take prompt corrective action

23   to address the alleged conduct. They failed to do so.

24         110.    Baca, while performing his job duties, was subjected to discrimination,

25   harassment, and/or retaliation on account of his disability, race, national origin, ancestry, age,

26   and/or engaging in protected activity in violation of FEHA.

27         111.    At all times material hereto, each of the Defendants was aware of and participated

28   in this conduct. Defendants, and each of them, knew or reasonably should have known that the

1   conduct alleged herein would and did cause the discriminatory, harassing, and/or retaliatory

2   effects and the physical and emotional distress to Baca as alleged above. All Defendants were

3   aware of the discriminatory, harassing, and retaliatory conduct to which Baca was subjected, as

4   well as the fact that he found it offensive, because Baca complained of the conduct to Defendants.

5          112.    The discrimination, harassment, and retaliation was objectively offensive to

6   reasonable employees in Baca's circumstances, and Baca himself found the conduct offensive.

7          113.    Defendants, and each of them, had the power, ability, authority, and duty to stop

8   engaging in the conduct alleged above and to intervene to prevent or prohibit such conduct.

9          114.    As a direct, foreseeable, and legal result of the Defendants' conduct, Baca has

10  suffered and continues to suffer substantial losses in employment potential and in earnings,

11  bonuses, deferred compensation, and other employment benefits, and has suffered and continues

12  to suffer substantial embarrassment, extreme and severe humiliation, mental anguish, and

13  emotional distress, all to his damage in an amount according to proof. Baca has incurred and will

14  incur medical and other incidental expenses for treatment by health professionals.

15         115.    Defendants committed the conduct alleged herein maliciously, fraudulently, and

16  oppressively with the wrongful intention of injuring Baca, from a willful improper motive

17  amounting to malice, and in conscious disregard of Baca's rights and for the deleterious

18  consequences of the Defendants' conduct. Defendants had actual and constructive knowledge of

19  the conduct described and alleged herein and, through their managing agents and/or supervisors,

20  authorized, condoned, and ratified the unlawful conduct of all of the other Defendants named in

21  this action. Baca is thus entitled to recover punitive damages in an amount according to proof.

22         116.    As a result of Defendants' conduct as alleged herein, Baca is entitled to reasonable

23  attorneys' fees and costs of suit.

24                            **NINTH  CAUSE OF ACTION**

25                       (Intentional Infliction of Emotional Distress)

26                              (Against All Defendants)

27         117.    Baca realleges and incorporates by reference all prior Paragraphs as if fully set

28  forth herein.

118.   As described above, Defendants engaged in outrageous conduct towards Baca with the intention to cause, or with reckless disregard for the probability of causing, him to suffer severe physical and emotional distress. To the extent that said outrageous conduct was perpetrated by certain Defendants, the remaining Defendants confirmed and ratified said conduct with the knowledge that Baca's emotional and physical distress would thereby increase, and with a wanton and reckless disregard for the deleterious consequences to Baca.

119.   Defendants, and each of them, were aware and/or should have been aware of the likelihood that Baca would suffer severe emotional distress as a result of the above-described outrageous conduct. The outrageous and shocking conduct of Defendants, and each of them, was done intentionally and for the purpose of inflicting upon Baca extreme and severe emotional distress.

120.   As a direct and foreseeable result of the Defendants' conduct, Baca has suffered and continues to suffer substantial losses in employment potential and in earnings, bonuses, deferred compensation, and other employment benefits, and has suffered and continues to suffer substantial embarrassment, extreme and severe humiliation, mental anguish, and emotional distress, all to his damage in an amount according to proof. Baca has incurred and will incur medical and other incidental expenses for treatment by health professionals.

121.   Defendants committed the conduct alleged herein maliciously, fraudulently, and oppressively with the wrongful intention of injuring Baca, from a willful improper motive amounting to malice, and in conscious disregard of Baca's rights and for the deleterious consequences of the Defendants' conduct. Defendants had actual and constructive knowledge of the conduct described and alleged herein and, through their managing agents and/or supervisors, authorized, condoned, and ratified the unlawful conduct of all of the other Defendants named in this action. Baca is thus entitled to recover punitive damages in an amount according to proof.

122.   As a result of Defendants' conduct as alleged herein, Baca is entitled to reasonable attorneys' fees and costs of suit.

## TENTH CAUSE OF ACTION

### (Failure to Pay All Earned Wages)

(Against All Defendants)

123.    Baca realleges and incorporates by reference all prior Paragraphs as if fully set forth herein.

124.    The Companies were employers under the California Labor Code and applicable IWC Wage Order.

125.    Pursuant to Labor Code section 558.1(a), "Any employer or other person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation." Subsection (b) defines the term "other person acting on behalf of an employer" to include "a natural person who is an owner, director, officer, or managing agent of the employer," and the term "managing agent" as having the same meaning as in subdivision (b) of Section 3294 of the Civil Code. Gott was and is a director, officer, and/or managing agent under section 558.1.

126.    California law presumes Baca was not exempt from the wage, hour, and working conditions rules provided in the Labor Code and applicable IWC Wage Order unless a specific exemption applies. No exemption applied to Baca's employment during the times that he was a Field Investigator.

127.    As a Field Investigator, both after Baca's demotion in July 2016 and before he was promoted to Case Manager in September 2013, Baca was routinely caused, suffered, and permitted to work in excess of eight hours a day and/or forty a week without being paid for all hours worked.

128.    Pursuant to Labor Code sections 204, 218, 218.5, 218.6, 510, 558, 1194, 1198, and related statutes, and also pursuant to the applicable IWC Wage Order, Defendants were required to pay Baca overtime compensation at prescribed hourly overtime rates for all overtime hours actually worked.

129.    At all times, Defendants had the ability to pay Baca the wages due to him but willfully refused to pay him. Defendants did this with the intent to secure for themselves or

herself a discount on its indebtedness and/or with intent to annoy harass, retaliate against, oppress, hinder, delay and/or defraud Baca.

130.    Defendants routinely and intentionally failed to calculate Baca's overtime compensation. Defendants routinely and intentionally failed to record accurate time records showing when Baca began and ended each work period. By failing to record properly the actual hours or days Baca worked, Defendants routinely and intentionally failed to pay Baca for the premium pay for all of his overtime hours when he was a Field Investigator, as required by Labor Code sections 204, 218, 218.5, 218.6, 510, 558, 1194, 1198, and related statutes, and also pursuant to the applicable IWC Wage Order. Specifically, Defendants failed to compensate Baca for overtime hours worked in excess of eight (8) hours per day, forty (40) hours per week, and/or for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek at one and one-half (1 ½) times the regular rate of pay, and/or double-time hours for hours worked in excess of twelve (12) hours per day and for all hours worked in excess of eight (8) hours on the seventh (7th) consecutive workday.

131.    As a direct and proximate result of Defendants' willful, knowing, and intentional violation of the above laws, Baca has been damaged in that he has not received all wages due and owing, and has suffered and continues to suffer losses related to the use and enjoyment of wages and lost interest on such wages, in amounts according to proof at trial.

132.    As a direct and proximate result of Defendants' willful, knowing, and intentional violation of the above laws, Baca was damaged by not receiving all wages owed to him and is entitled, pursuant to Labor Code section 1194, to recover the unpaid balance of the full amount of this overtime wage compensation due, including interest thereon, together with reasonable attorneys' fees and costs of suit.

133.    As a direct and proximate result of Defendants' willful, knowing, and intentional violation of the aforementioned labor regulations, Baca is entitled, pursuant to Labor Code section 558, to recover civil penalties against Defendants.

### ELEVENTH  CAUSE OF ACTION

(Failure to Pay Overtime Compensation in Violation of 29 U.S.C. §§ 206, 207, 216)

1       (Against Contego and Patriot)

2       134.    Baca realleges and incorporates by reference all prior Paragraphs as if fully set

3       forth herein.

4       135.    The FLSA provides that no employer shall employ any employee for "a workweek

5       longer than forty hours unless such employee receives compensation for his employment in

6       excess of the hours above specified at a rate not less than one and one-half times the regular rate

7       at which he is employed." 29 U.S.C. § 207(a).

8       136.    At all relevant times, Baca was "engaged in commerce" and/or "employed by an

9       enterprise engaged in commerce" within the meaning of the FLSA. At all times relevant to this

10      cause of action, the Companies were acting as Baca's employer within the meaning of the FLSA.

11      29 U.S.C. § 203(d).

12      137.    The Companies employed Baca for more than forty hours per workweek and failed

13      to pay Baca the overtime compensation required by the FLSA.

14      138.    The Companies deprived Baca of his rightfully earned overtime compensation as a

15      direct and proximate result of their failure to pay said compensation. Baca is entitled to recover

16      such amounts. Pursuant to 29 U.S.C. section 216(b), Baca is also entitled to recover reasonable

17      attorneys' fees, costs of suit, and liquidated damages in an amount equal to his unpaid overtime

18      compensation.

19                              **TWELFTH CAUSE OF ACTION**

20              (Failure to Provide Meal Periods or Compensation in Lieu Thereof)

21                              (Against All Defendants)

22      139.    Baca realleges and incorporates by reference all prior Paragraphs as if fully set

23      forth herein.

24      140.    The Companies were employers under the California Labor Code and applicable

25      IWC Wage Order.

26      141.    Pursuant to Labor Code section 558.1(a), "Any employer or other person acting on

27      behalf of an employer, who violates, or causes to be violated, any provision regulating minimum

28      wages or hours and days of work in any order of the Industrial Welfare Commission, or violates,

1   or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as

2   the employer for such violation." Subsection (b) defines the term "other person acting on behalf

3   of an employer" to include "a natural person who is an owner, director, officer, or managing

4   agent of the employer," and the term "managing agent" as having the same meaning as in

5   subdivision (b) of Section 3294 of the Civil Code. Gott was and is a director, officer, and/or

6   managing agent under section 558.1.

7        142.    California law presumes Baca was not exempt from the wage, hour, and working

8   conditions rules provided in the Labor Code and applicable IWC Wage Order unless a specific

9   exemption applies. No exemption applied to Baca's employment during the times that he was a

10  Field Investigator.

11       143.    Labor Code section 226.7(b) provides that an employer "shall not require an

12  employee to work during a meal or rest or recovery period mandated pursuant to an applicable

13  statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the

14  Occupational Safety and Health Standards Board, or the Division of Occupational Safety and

15  Health."

16       144.    Labor Code section 226.7(c) provides that "[i]f an employer fails to provide an

17  employee a meal or rest or recovery period in accordance with a state law . . . the employer shall

18  pay the employee one additional hour of pay at the employee's regular rate of compensation for

19  each workday that the meal or rest or recovery period is not provided."

20       145.    Labor Code section 512 provides that an employer "may not employ an employee

21  for a work period of more than five hours per day without providing the employee with a meal

22  period of not less than 30 minutes, except that if the total work period per day of the employee is

23  no more than six hours, the meal period may be waived by mutual consent of both the employer

24  and employee. An employer may not employ an employee for a work period of more than 10

25  hours per day without providing the employee with a second meal period of not less than 30

26  minutes, except that if the total hours worked is no more than 12 hours, the second meal period

27  may be waived by mutual consent of the employer and the employee only if the first meal period

28  was not waived."

146.    As a Field Investigator, both after his demotion in July 2016 and before he was promoted to Case Manager in September 2013, Defendants routinely failed to provide Baca timely meal periods or premium pay in lieu thereof. Indeed, while on surveillance assignments, which often extended for more than five hours, Baca was required to stay on site and in his car at all times, meaning Baca worked for Defendants without being provided an uninterrupted, duty-free 30-minute meal period for a work period of more than five hours or a second meal period for a work period of more than ten hours. Baca was not provided and routinely had to forego meal periods to perform his job duties.

147.    Defendants never paid Baca an hour of premium pay in lieu of a missed meal period in a day.

148.    As a direct and proximate result of Defendants' willful conduct, Baca has suffered harm and is entitled to an additional hour of premium pay for each shift during which he was not provided a 30-minute uninterrupted, duty-free meal period, in an amount to be ascertained at trial.

**THIRTEENTH CAUSE OF ACTION**

(Failure to Provide Rest Breaks or Compensation in Lieu Thereof)

(Against All Defendants)

149.    Baca realleges and incorporates by reference all prior Paragraphs as if fully set forth herein.

150.    The Companies were employers under the California Labor Code and applicable IWC Wage Order.

151.    Pursuant to Labor Code section 558.1(a), "Any employer or other person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation." Subsection (b) defines the term "other person acting on behalf of an employer" to include "a natural person who is an owner, director, officer, or managing agent of the employer," and the term "managing agent" as having the same meaning as in subdivision (b) of Section 3294 of the Civil Code. Gott was and is a director, officer, and/or

1    managing agent under section 558.1.

2         152.    California law presumes Baca was not exempt from the wage, hour, and working

3    conditions rules provided in the Labor Code and applicable IWC Wage Order unless a specific

4    exemption applies. No exemption applied to Baca's employment during the times that he was a

5    Field Investigator.

6         153.    Labor Code section 226.7(b) provides that an employer "shall not require an

7    employee to work during a meal or rest or recovery period mandated pursuant to an applicable

8    statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the

9    Occupational Safety and Health Standards Board, or the Division of Occupational Safety and

10   Health."

11        154.    Labor Code section 226.7(c) provides that "[i]f an employer fails to provide an

12   employee a meal or rest or recovery period in accordance with a state law . . . the employer shall

13   pay the employee one additional hour of pay at the employee's regular rate of compensation for

14   each workday that the meal or rest or recovery period is not provided."

15        155.    The applicable IWC Wage Order requires that employers authorize and permit

16   non-exempt employees to take a rest period that must, insofar as practicable, be taken in the

17   middle of each work period, based on the total hours worked daily and at the minimum rate of a

18   net ten consecutive minutes for each four-hour work period, or major fraction thereof.

19        156.    As a Field Investigator, both after his demotion in July 2016 and before he was

20   promoted to Case Manager in September 2013, Defendants routinely failed to provide Baca

21   timely meal periods or premium pay in lieu thereof. Indeed, while on surveillance assignments,

22   which often extended for more than five hours, Baca was required to stay on site and in his car at

23   all times, meaning Baca worked for Defendants without being provided rest breaks at a minimum

24   rate of a net ten consecutive minutes for each four-hour work period, or major fraction thereof.

25   Baca was not provided and routinely had to forego rest breaks to perform his job duties.

26        157.    Defendants never paid Baca an hour of premium pay in lieu of a missed rest break

27   in a day.

28        158.    As a direct and proximate result of Defendants' willful conduct, Baca has suffered

1  harm and is entitled to an additional hour of premium pay for each shift during which he was not

2  provided a rest break, in an amount to be ascertained at trial.

3  **FOURTEENTH CAUSE OF ACTION**

4  (Failure to Provide Accurate Itemized Wage Statements)

5  (Against All Defendants)

6  159.   Baca realleges and incorporates by reference all prior Paragraphs as if fully set

7  forth herein.

8  160.   The Companies were employers under the California Labor Code and applicable

9  IWC Wage Order.

10  161.   Pursuant to Labor Code section 558.1(a), "Any employer or other person acting on

11  behalf of an employer, who violates, or causes to be violated, any provision regulating minimum

12  wages or hours and days of work in any order of the Industrial Welfare Commission, or violates,

13  or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as

14  the employer for such violation." Subsection (b) defines the term "other person acting on behalf

15  of an employer" to include "a natural person who is an owner, director, officer, or managing

16  agent of the employer," and the term "managing agent" as having the same meaning as in

17  subdivision (b) of Section 3294 of the Civil Code. Gott was and is a director, officer, and/or

18  managing agent under section 558.1.

19  162.   California law presumes Baca was not exempt from the wage, hour, and working

20  conditions rules provided in the Labor Code and applicable IWC Wage Order unless a specific

21  exemption applies. No exemption applied to Baca's employment during the times that he was a

22  Field Investigator.

23  163.   Labor Code section 226 requires an employer to keep accurate, itemized pay

24  statements. Each pay statement must accurately itemize: gross wages earned; the precise, actual

25  number of hours and minutes worked by a non-exempt employee; all deductions; net wages

26  earned; inclusive dates of the pay period; the name of the employee; the name and address of the

27  legal entity that is the employer; and all applicable hourly rates in effect during the pay period.

28  164.   As a Field Investigator, both after his demotion in July 2016 and before he was

1   promoted to Case Manager in September 2013, the Companies routinely, knowingly, and

2   intentionally failed to provide Baca, at the time of each payment of wages, an accurate itemized

3   statement in writing that satisfied the requirements of Labor Code section 226.

4       165.   As a direct and proximate result of the Companies' knowing and willful conduct,

5   Baca has suffered harm and is entitled to the greater of actual damages as ascertained at trial or

6   $50 for the initial pay period and $100 for each subsequent pay period, not exceeding an

7   aggregate penalty of $4,000.

8       166.   As a direct and proximate result of the Companies' willful, knowing, and

9   intentional conduct, Baca is entitled to recover civil penalties pursuant to Labor Code section

10  226.3.

11  **FIFTEENTH  CAUSE OF ACTION**

12  (Failure to Provide Employment and Personnel Files)

13  (Against Contego and Patriot)

14      167.   Baca realleges and incorporates by reference all prior Paragraphs as if fully set

15  forth herein.

16      168.   Labor Code section 226(c) provides that an employer "who receives a written or

17  oral request to inspect or copy records pursuant to subdivision (b) pertaining to a current or

18  former employee shall comply with the request as soon as practicable, but no later than 21

19  calendar days from the date of the request."

20      169.   Labor Code section 432 provides that an employee who "signs any instrument

21  relating to the obtaining or holding of employment. . . shall be given a copy of the instrument

22  upon request."

23      170.   Labor Code section 1198.5(b)(1) provides that an "employer shall make the

24  contents of [an employee's] personnel records available for inspection to the current or former

25  employee, or his or her representative, at reasonable intervals and at reasonable times, but not

26  later than 30 calendar days from the date the employer receives a written request."

27      171.   Labor Code section 1198.5 also establishes an employee's right to recover

28  penalties for violation of the statute, together with costs of suit and attorneys' fees.

172.    On March 31, 2017, Baca requested, through his counsel and pursuant to Labor Code sections 226, 432, and 1198.5, that the Companies provide copies of all his personnel and employment files.

173.    The Companies provided Baca's files more than thirty days later, on May 1, 2017.

174.    As a direct and proximate result of the Companies' conduct, Baca is entitled to statutory penalties and to his reasonable attorneys' fees and costs.

### SIXTEENTH CAUSE OF ACTION

(Unlawful and Unfair Business Practices in Violation of Business & Professions Code § 17200, *et seq.*, and Code of Civil Procedure § 526)

(Against Contego and Patriot)

175.    Baca realleges and incorporates by reference all prior Paragraphs as if fully set forth herein.

176.    California Business & Professions Code sections 17200 *et seq.* prohibit acts of unfair competition, which includes any "unlawful and unfair business practices."

177.    The Companies' conduct, as alleged herein, have been and continue to be unfair, unlawful, and deleterious to Baca. Baca hereby seeks to enforce important rights within the meaning of Code of Civil Procedure section 1021.5. Baca is a "person" within the meaning of the Business & Professions Code section 17204, and therefore possesses standing to bring this suit for injunctive relief and restitution.

178.    It is the policy of California to enforce minimum labor standards, to ensure that employees are not required or permitted to work under substandard and unlawful conditions, and to protect those employers who comply with the law from losing competitive advantage to other employers who fail to comply with labor standards and requirements.

179.    Through the conduct alleged herein, the Companies acted contrary to these public policies and have engaged in unlawful and/or unfair business practices in violation of Business & Professions Code sections 17200 *et seq.*, depriving Baca of the rights, benefits, and privileges guaranteed to employees under California law.

180.    The Companies regularly and routinely violated the California Labor Codes and/or

applicable IWC Wage Order with respect to the allegations in this Complaint. Namely, the Companies regularly and routinely failed to provide Baca overtime pay, adequate meal periods, or adequate rest breaks as required by the California Labor Code and applicable IWC Wage Order.

181.    By engaging in theses unfair business practices, the Companies harmed Baca and, by that design and plan, gained an unfair competitive edge in the marketplace.

182.    Under Business & Professions Code section 17203, Baca is entitled to obtain restitution of these funds from the Companies on behalf of himself and others affected by the Companies' unfair business practices.

183.    Pursuant to Business & Professions Code section 17203, injunctive relief is necessary to prevent the Companies from continuing to engage in the unfair business practices alleged herein. Baca is informed and believes, and based thereon alleges, that the Companies and persons acting in concert with them have committed and will continue to commit the above unlawful acts unless restrained or enjoined by this Court. Unless the relief prayed for below is granted, a multiplicity of actions will result. Baca has no plain, speedy, or adequate remedy at law, in that pecuniary compensation would not afford adequate and complete relief. The above described acts will cause great and irreparable damage to Baca unless the Companies are restrained from committing further illegal acts.

184.    Baca's success in this action will result in the enforcement of important rights.

185.    Private enforcement of the rights enumerated in this complaint is necessary, as public agencies have only sought limited enforcement of those rights, if any. Baca, individually and by and through counsel, has incurred and continues to incur a financial burden in pursuing this action. Baca further seeks to enjoin the above-referenced unlawful actions under the Labor Code. Therefore, Baca seeks an award of attorneys' fees and costs of suit on this cause of action pursuant to Code of Civil Procedure § 1021.5 and other applicable Labor Code sections.

## **PRAYER FOR RELIEF**

WHEREFORE, Baca prays for judgment against all Defendants, and each of them, as follows:

1.    Compensatory damages, including but not limited to for losses resulting from

1     humiliation, mental anguish, and emotional distress, in amounts to be proven at

2           trial;

3     2.    General and special damages, in amounts to be proven at trial;

4     3.    Liquidated damages;

5     4.    Statutory penalties;

6     5.    Interest according to law;

7     6.    Exemplary and punitive damages, in amounts to be proven at trial;

8     7.    Costs of suit;

9     8.    Reasonable attorneys' fees; and

10    9.    For such other and further relief as this Court may deem just and proper.

11                        **REQUEST FOR TRIAL BY JURY**

12    Baca hereby requests a trial by jury.

13

14                              Respectfully submitted,

15    Date:  December 4, 2017          SHEIK LAW, INC.

16

17                              By:  _____/s/ Mani Sheik_____
                                     Mani Sheik
18                                   Attorneys for Plaintiff James Baca

19

20

21

22

23

24

25

26

27

28